MOUNT et al. v. SEAGRAVE CORP. et al.

Civ. No. 3600.

United States District Court
S. D. Ohio, E. D.

Feb. 6, 1953.

331

Robert Dow Hamilton, Columbus, Ohio, and Geist and Netter, New York City, for plaintiff.

Allen Pretzman and Noel L. Greenlee, both of Columbus, Ohio, for defendant.

UNDERWOOD, Chief Judge.

This is an action wherein plaintiffs, minority stockholders of defendant corporation, seek to enjoin defendant corporation and its Directors from presenting or submitting to the stockholders for approval a proposed transaction between the Seagrave Corporation and Herbert A. Post, Inc. Plaintiffs also seek to have the consummation of the transaction and the amendment to the Articles of the corporation restrained and a decree declaring the proposed plan to be illegal, void, hostile and inimicable to the best interest of Seagrave and its stockholders. Since this action was filed on the day of a scheduled stockholders' meeting, enjoining the meeting would have caused great damage to the corporation if the ultimate determination of the cause on the merits should be favorable to defendants.

Therefore, with the approval of counsel for plaintiff and defendants, the Court entered an order which permitted the stockholders' meeting to proceed, but ordered that no action be taken pursuant to any authorization granted or voted at the meeting until the decision of the Court in this case after a hearing on the merits.

Thereafter the evidence was presented before a Special Master and supplemented by subsequent stipulations of the parties and the matter was duly submitted to the Court for a decision on the record.

The Court having carefully considered the evidence, and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

Findings of Fact.

1. That defendant, The Seagrave Corporation (hereinafter sometimes referred to as "Seagrave"), is a corporation organized and existing under the laws of the State of Michigan and having its principal assets and place of business in the City of Columbus, State of Ohio, where it is duly authorized to do business. The principal product of Seagrave is motorized fire-fighting equipment.

2. That the officers and Directors of Seagrave are as follows:

H. B. Spain, President and Director
J. Lester Stevenson, Vice-President and Director
Allen I. Pretzman, Director
Charles B. Wilkes, Director
Robert B. Wilkes, Director
Arthur A. Marcus, Director
John J. McCarthy, Director
H. M. Havens, Vice-President
A. C. Black, Secretary-Treasurer
L. K. Fornof, Assistant Secretary-Treasurer
A. A. Kloss, Assistant Secretary-Treasurer

3. That Seagrave at present has an authorized capital of 125,000 shares of common stock of the par value of $5 per share, all of one class, of which there are now issued and outstanding 122,700 shares, with one vote per share.

4. That each of the plaintiffs herein is the owner of stock of Seagrave, each owning the number of shares hereinafter set forth opposite his or her name, and which he or she has owned since the date indicated:

| | | |
|---|---|---|
| Mabel Mount | 50 shares | owned since Feb. 9, 1951 |
| Mathilde C. Seiff | 100 shares | owned since Dec. 20, 1950 |
| Mathilde C. Seiff | 50 shares | owned since March 12, 1952 |
| Frankie T. Wygant | 100 shares | owned since May 31, 1951 |
| Frankie T. Wygant | 100 shares | owned since March 12, 1952 |
| Esther Chadnow | 50 shares | owned since March 12, 1952 |
| Anna Weintraub | 100 shares | owned since April 2, 1951 |
| Irving Brett | 50 shares | owned since Feb. 9, 1951 |
| Irving Brett | 100 shares | owned since Aug. 6, 1951 |
| Sam Spector | 100 shares | owned since April 30, 1951 |

5. That each of the plaintiffs herein is a citizen and resident of the State of New York. Each of the defendants other than Seagrave is a citizen and resident of the State of Ohio. Seagrave is a citizen and resident of the State of Michigan.

6. That the amount in controversy herein is in excess of $3,000.

7. That Herbert A. Post, Inc., a New York corporation, owns all the issued and outstanding common stock (40,000 shares) of The Fyr-Fyter Company, an Ohio corporation (hereinafter sometimes referred to as "Fyr-Fyter"). Fyr-Fyter is engaged in the manufacture of portable fire extinguishers and other small items of fire-fighting equipment. William McKinley Wetzel (hereinafter sometimes referred to as "Wetzel") is the owner of all of the issued and outstanding shares of stock of Post. Wetzel's ownership of Post gives him absolute control of Fyr-Fyter because Post owns all the outstanding shares of common stock of Fyr-Fyter. Fyr-Fyter has also, issued and outstanding 20,000 shares of 5% cumulative preferred stock, of which Wetzel owns at least 9,485 shares, and 10,000 shares of which are owned by a Mr. Marlier, a friend and business associate of Wetzel.

8. That the facts concerning the negotiations which resulted in the proposal involved herein, are as stated in the last six full paragraphs of Page 3 of the Proxy Statement which is attached hereto and made a part hereof.

9. That Exhibits A, B and C, commencing on pages 30, 36 and 39 respectively of the Proxy Statement, are correct copies of the agreement between Seagrave and Post, of the proposed amendment to Article V of the Articles of Incorporation and of the agreement for sale of common stock, entered into between Wetzel and members of the Wilkes group, which is represented on the Board of Directors by Messrs. Charles B. Wilkes, Robert B. Wilkes, Arthur A. Marcus and John J. McCarthy.

10. That it is undisputed that the Wilkes group, which owns approximately 43,000 shares of common stock, and which is exercising working control of Seagrave through a majority on the Board of Directors, has been in serious disagreement over company policies with Messrs. Pretzman, Spain and Stevenson, who are minority members of the Board of Directors, and who are also in active management of the company as officers and general counsel.

11. That the conflict between the present members of the Board of Directors was so bitter and intense that if it continued, the logical consequence appeared to be either the resignation or discharge of Pretzman, Spain and Stevenson from their respective positions as Counsel, President and Vice-President of Seagrave Corporation; none of these officials of the corporation has an employment contract with the corporation.

12. That the Proxy Statement did not inform the stockholders of the conflict among the Directors.

13. That Wetzel, who will have control of Seagrave if the plan is consummated, has promised to continue to employ Pretzman,

Spain and Stevenson in their respective positions with the corporation.

14. That the fact that Pretzman, Spain and Stevenson have definite reasons to believe that their continued employment by the corporation would be more certain if the plan were consummated, has not been called to the attention of the stockholders in the Proxy Statement.

15. That the members of the Wilkes group, who would sell 35,000 shares of common stock to Wetzel pursuant to the plan, would receive approximately $6.00 per share in excess of the current market value, or a total of more than $200,000 in excess of the current market value of said common stock.

16. That the invested capital of the Seagrave Corporation is several times greater than that of Fyr-Fyter and its subsidiary, Wooster Brass.

17. That in the last four and one-half years, which cover the most recent period of operation and involve the only time in the last eleven and one-half years that the operation of Seagrave has not been substantially handicapped by the effect of World War II, Seagrave has earned for common stockholders $1,661,681, while during the same period Fyr-Fyter and its subsidiary, Wooster Brass, earned $842,095.

18. That if Wetzel and Marlier should elect to redeem the Seagrave preferred stock which they are to receive pursuant to the plan, and use this money to pay for the 35,000 shares of common stock which Wetzel has agreed to buy from the Wilkes group, the plan will mean that Wetzel and his friend Marlier will have exchanged a minority interest in Fyr-Fyter for a majority, or controlling interest in the Seagrave Corporation. The invested capital of the Seagrave Corporation is several times greater than that of Fyr-Fyter and its subsidiary, Wooster Brass, and the earnings of Seagrave going to common stockholders in the last four and one-half years have been approximately twice the earnings of Fyr-Fyter and Wooster Brass for the benefit of their common stockholders.

19. That the common stock owned by Pretzman, Spain and Stevenson is less than 5% of the common stock outstanding at the time the plan involved herein was proposed. That the total value of all the common stock owned by Spain, Stevenson and Pretzman based on the current market value of the said stock is approximately $76,922.50.

20. That for the last five years, 1947 through 1951, Spain, Stevenson and Pretzman have received total fees and salaries which have averaged in excess of $35,000 per year. That in the year 1951 the said Directors received fees and salaries which totaled more than $41,000.

Conclusions of Law.

1. That the Court has jurisdiction of the parties and the subject matter of this action.

2. That each of the Directors has a substantial personal interest in the consummation of the proposed plan, which interest is only incidentally related to his interest as a stockholder, and in the case of the four Directors representing the so-called Wilkes group who are to resign pursuant to the plan, the interest of such Directors and of the group which they represent is clearly in conflict with the interests of the minority stockholders.

3. The Directors of Seagrave are fiduciaries, exercising their powers in trust for Seagrave and all its shareholders.

4. By reason of their domination and control of Seagrave and their representation by four of the seven Directors of Seagrave, the controlling group of stockholders headed by Charles B. Wilkes, Arthur A. Brown and Morton Globus are fiduciaries, exercising their powers of domination and control in trust for Seagrave and all its shareholders.

5. An integral part of the proposed plan for the amendment of Seagrave's charter and the exchange of the new Seagrave common and preferred stock for Fyr-Fyter stock is the sale to Wetzel by the controlling group of stockholders of immediate control of Seagrave, includ-

334

ing the immediate resignation of a majority of the Board of Directors, for a substantial premium above the market price of the stock. Such premium is not available to other stockholders. The plan is inequitable, unfair and illegal, and its approval by the Directors and the controlling group of stockholders is a violation of their fiduciary duties owed to Seagrave and to all its shareholders.

■ 6. In considering and approving the proposed plan, the Directors, Charles B. Wilkes, Robert B. Wilkes, Arthur A. Marcus and John J. McCarthy, did not act in the unprejudiced exercise of their judgment for the benefit of Seagrave and all its stockholders, but acted primarily in the special interests of the controlling group of stockholders, and this was a violation of their fiduciary duty owed to Seagrave and all its stockholders.

■ 7. Howard B. Spain and J. Lester Stevenson, as officers and Directors, and Allen I. Pretzman, as Director and Chairman of the Board, in considering and approving the proposed plan did not act in the unprejudiced exercise of their judgment for the benefit of Seagrave and all its stockholders, but acted primarily because of their desire to transfer control of Seagrave from the present dominant group of stockholders, with whom they were and are in disagreement and unhappy, to Wetzel, from whom they had assurance that under his control they would continue in their present positions, and this was in violation of their fiduciary duty owed to Seagrave and all its stockholders.

8. In considering and approving the proposed plan, the Directors of Seagrave did not act in good faith or with reasonable care and they violated their fiduciary duties as Directors.

9. That the approval by the majority of the stockholders of the proposed plan which is in violation of the principles of equity, is not binding upon the stockholders or the corporation.

■ 10. In issuing the Proxy Statement dated September 5, 1952 for the shareholders' meeting of September 29, 1952, and in soliciting proxies and in voting the proxies that were received, the management of Seagrave were fiduciaries for the corporation and its shareholders. Said Proxy Statement was inadequate, incomplete, misleading, unfair and did not fairly inform the stockholders of all the material facts.

11. That plaintiffs have no adequate remedy at law.

12. That an injunction should issue permanently enjoining Seagrave, its Directors, officers, servants, agents and employees from carrying out, consummating or effectuating the proposed transaction, plan and amendment to the Articles of Incorporation or any part thereof.

13. That the Court retains jurisdiction for the purpose of passing upon any application by the attorneys and counsel for the plaintiffs and accountants for allowances of fees, expenses and disbursements and directing that such allowances as shall be found by the Court to be fair and reasonable shall be assessed as costs against and paid by Seagrave and be recoverable in the same manner as statutory costs. Court costs, including record, are taxed against defendant.