Walter R. Hart, J.
Plaintiff here seeks judgment declaring void the voting trust agreement dated April 21, 1948 and executed by and between the 21 individual defendants, as stockholders and as voting trustees. Incidental injunctive relief is also prayed for.
The action was commenced in May, 1949. The validity of the voting trust is attacked in the complaint on the ground that a copy thereof was not filed in the office of the corporate defendant and that the contents thereof were kept secret, so that plaintiff, an owner of 220 shares of the common stock (the only class of stock permitted to vote) was not afforded an opportunity to participate therein. It is contended that the voting trust agreement is in contravention, therefore, of section 50 of the Stock Corporation Law.
*159 The sufficiency of the complaint was sustained at Special Term by an order denying a motion to dismiss, which order was affirmed on appeal (276 App. Div. 913).
Subsequent to the affirmance by the Appellate Division, defendant interposed an answer verified January 26, 1950 denying allegations that the agreement was in full force and effect between April 21,1948 and March 21, 1949 and that its contents were kept secret from the plaintiff. The answer alleges affirmatively that since the commencement of the “ proceeding ” [sic] the voting trust agreement was filed with the secretary of the corporation, and that notification of its filing was mailed to each and every stockholder and an opportunity afforded them to become parties to the agreement.
The facts were stipulated at the trial. Paramount Ice Corporation was organized by some 30-odd independent ice dealers so as to place them in a competitive position with large purchasers. Preferred and common stock were issued in accordance with the amounts invested. Common stock was issued in the amount of 2,980 shares of which plaintiff owns 220. The voting trust agreement dated April 21, 1948 was signed by 21 stockholders owning 1,574 shares, each of whom was designated a voting trustee.
A proceeding was brought in 1949 by this plaintiff to set aside the election of directors held in January of that year on the ground that they had been elected by voting trustees functioning under a voting trust which was invalid since it had not been filed with the corporation as required by section 50 of the Stock Corporation Law. The respondent in that proceeding prevailed and the election was sustained upon proof satisfactory to the Official Referee, to whom the matter was referred to hear and report, that the shares of the defendants were voted pursuant to proxies given to defendants ’ counsel, Mr. Leone, and not by the use of the voting trust. This report was confirmed at Special Term by an order dated June 10, 1949 The instant action was commenced in May, 1949. On or about August 15, 1949 the voting trust was filed with the secretary of the corporation. Notification thereof was given by mail to all stockholders advising them of their opportunity to become parties to the agreement. At the election held in January, 1950 the voting trustees employed the trust agreement to vote the 1,574 shares transferred to them pursuant thereto. Stockholders owning additional 196 shares joined them in voting for the board of directors.
*160 It is plaintiff’s contention that, because of the lapse in time between the execution of the agreement and the filing thereof, with the consequential inability of plaintiff to participate therein, the voting trust is totally void and of no effect. Plaintiff further urges that the filing subsequent to the commencement of the action does not have the effect of validating the trust agreement, which he claims is void as being in contravention of section 50 of the Stock Corporation Law as construed by the Court of Appeals in Matter of Morse (247 N. Y. 290). I am not in accord with plaintiff’s interpretation of that opinion. In Matter of Morse, an existing voting trust agreement between the stockholders of a banking corporation was declared invalid by reason of an amendment in 1925 to section 50 of the Stock Corporation Law which prohibited the transfer of stock of a banking corporation to voting trustees. The court reasoning that this interdiction which prevented stockholders not parties to the agreement from joining in the participation thereof was violative of the statutory provision that ‘1 Every other stockholder may transfer his stock to the same trustee or trustees and thereupon shall be a party to such agreements ” (p. 298).
Section 50 of the Stock Corporation Law provides: “A stockholder, by agreement in writing, may transfer his stock to a voting trustee or trustees for the purpose of conferring the right to vote thereon for a period not exceeding ten years upon the terms and conditions therein stated.”
As is to be noted, the statute is silent as to the time within which the voting trust is to be filed and does not provide for the legal effect of noncompliance. Though the opinion in Matter of Morse states (p. 298) that “No voting trust not within the terms of the statute is legal ’ ’, in my opinion, the failure to file merely means that the trust agreement is not invalid but merely inoperative to permit the trustees to exercise the voting rights granted thereby until it is so filed. It may well be that after securing the signatures of 51% of the shareholders the trustees may desire to obtain additional signatures. It is not incumbent upon them immediately upon obtaining the signatures of the owners of 51% of the issued stock to file the agreement, nor is it requisite that the agreement be filed mstanter after having secured the first signature. The nonfiling does not render the agreement void ab imtio. To hold otherwise would mean that in the interval between the execution by stockholders owning some of the shares pending solicitation of and participation by additional stockholders, an agreement would be rendered void and could not become validated and free from future attack, even though ultimately joined in by the majority or even all *161 of the stockholders. Such a result would be incongruous and absurd. Where possible a statute will not be construed so as to lead to an incongruous or absurd situation (East v. Brooklyn Heights R. R. Co., 195 N. Y. 409; Matter of Schmidt v. Wolf Contr. Co., 269 App. Div. 201). Courts have the duty “ to give effect to statutes as they are ivritten and that we may not limit or extend the scope of the statute as written unless literal construction of the statute would produce a result which the Legislature plainly did not intend ” (Matter of Russo v. Valentine, 294 N. Y. 338, 342).
A reasonable construction of section 50 requires a finding that it was the intention of the Legislature that a voting trust will merely be inoperative until such time as the statute has been complied with by the filing of the agreement so that all stockholders are afforded an opportunity to transfer their stock to the same trustees. Nor does the statute require that all stockholders be afforded like opportunity to participate therein prior to its filing or that the contents of the agreement be made known prior to that time.
Moreover, on the principle that equity speaks as of the time of the decree (30 C. J. S., Equity, § 600, p. 990; cf. Kilbourne v. Board of Supervisors, 137 N. Y. 170, 178; cf. Ostrom v. Greene, 20 Misc. 177, 186), upon the finding that prior to the trial the statutory requirements have been fully satisfied, it follows that plaintiff’s objections based on the noncompliance at the time of the commencement of the action should be disregarded.
Though not raised by the pleadings, the parties chose to litigate the legality of two of the provisions of the agreement. Plaintiff attacks the validity of paragraph tenth of the voting trust which reads as follows: “ The Voting Trustees for the time being shall have the power and authority by three-quarters consent in writing filed with paramount ice corporation and a copy of which shall be mailed to each Certificate Holder at his address as the same shall appear upon the books of the Voting Trustees, to add from time to time one or more Trustees to the number of Voting Trustees under this Agreement, provided, however, that no person shall be so added as a Voting Trustee unless he shall at the time of his designation as a Voting Trustee be the holder of not less than fifty (50) shares of the common capital stock of paramount ice corporation of which not less than forty-five (45) shares thereof at the time of his acceptance of said designation as a Voting Trustee and as a condition to his becoming such Trustee, shall be transferred by bim to the Voting Trustees under the terms and provisions of this Agreement, and provided further that such person so designated shall *162 continue to be a stockholder of record with respect to at least one (1) share of the common capital stock of paramount ice corporation. Any Voting Trustee so appointed and added as aforesaid shall immediately become vested with all the rights, property, powers and authority vested in a Voting Trustee pursuant to this Agreement.”
Plaintiff requests that the above paragraph be read in conjunction with that portion of paragraph twelfth of the agreement which provides, “Each Voting Trustee hereunder shall, at all times during the term of this agreement, be a director ’ ’.
Plaintiff predicates his claim of invalidity on the assertion that, since nine of the stockholders each of whom owns less than 50 shares, are, by the terms of the agreement, voting trustees, the above provisions are discriminatory against those stockholders who are not original participants and who likewise own less than 50 shares. Plaintiff’s theory is premised on the statutory requirement that “ Every other stockholder may transfer his stock to the same trustee or trustees and thereupon shall be a party to such agreement.” He claims that this has been construed to mean that all stockholders must be permitted to join on equal terms. The authority submitted for this proposition is the Morse case and its holding that for a voting trust to be legal all stockholders under the statute must be afforded an equal opportunity to participate. It may be said that in view of the fact that this is not a representative action and plaintiff concededly owns shares (220) in excess of the amount required by the trust agreement, that question is academic and of no immediate concern to the court (see 30 C. J. S., Equity, § 601). Nor does it appear from the record that there are in fact any nonmember stockholders owning less than 50 shares of stock. Moreover plaintiff’s challenge to the validity of these provisions of the agreement lacks substance. “A voting trust agreement capable of construction which will make it valid will not be adjudged illegal” (Mannheimer v. Keehm, 30 Misc 2d 584, mod. on other grounds 268 App. Div. 813 [citing Manson v. Curtis, 223 N. Y. 313, 324]). The policy of the State is to give recognition to voting trusts created by a transfer of stock in a corporation from the stockholders by their free and voluntary act (277 Park Ave. v. New York Cent. R. R. Co., 194 Misc. 417, affd. 275 App. Div. 1028).
No statute requires, nor is any authority cited for the proposition that a stockholder has a vested right to become a voting trustee or director. The choice in selection of the trustees remains with the original subscribers who may properly establish the qualifications of the trustees. The right to elect *163 directors remains with the stockholders, their proxies or voting trustees. The requirement of the agreement of ownership of 50 shares limits eligibility as a voting trustee and is not a qualification for participation as a stockholder. ‘ ‘ In this State voting trust agreements are not presumed to be void until the contrary appears; they are valid and binding if they do not contravene any express charter or statutory provision or contemplate some fraud, oppression or wrong against other stockholders ” (Mannheimer v. Keehn, supra, p. 588, citing Manson v. Curtis, supra, p. 320). I find that plaintiff’s contentions with respect to the illegality of this paragraph are untenable.
The legality of paragraph twelfth of the voting trust agreement is also challenged. It provides:
Each Voting Trustee hereunder shall, at all times during the term of this agreement, be a director of the paramount ice corporation, unless he or she declines, in writing, to act as such.
The Voting Trustees may act hereunder either with respect to voting the stock held by them or otherwise, either in person or by proxy. Except as hereinafter otherwise specifically provided, all questions arising among the Voting Trustees from time to time (with respect to voting, with respect to giving stockholders’ consent to any corporate action or change or otherwise, or with respect to any other matter or thing) shall be determined by the decision, vote or consent of not less than three-quarters (%) of the number of those then acting as Voting Trustees, either at a meeting, or by writing, with or without meeting, and in like manner they may establish their rules of action. In respect of the matters hereinafter enumerated, the decision, vote or act or not less than the following respective numbers of the Voting Trustees shall for and in the exercise of the voting power or in respect of stockholders’ consents and for all purposes of this Agreement, be deemed the decision or act of all the Voting Trustees:
(a) In voting for members of the Board of Directors of paramount ice corporation, other than the Voting Trustees, three-quarters of the number of Voting Trustees acting as such for the time being.
(b) For increasing the amount of the preferred stock of paramount ice corporation, the entire number of the Voting Trustees acting as such for the time being.
(c) For increasing the amount of the common stock of paramount ice corporation, the entire number of Voting Trustees acting as such for the time being.
(d) For the classification or re-classification of stock, preferred or common, of paramount ice corporation, the entire number of Voting Trustees acting as such for the time being.
(e) For change of name of paramount ice corporation, three-quarters (%) of the number of Voting Trustees acting as such for the time being.
(f) Giving consent to mortgage property or franchises of paramount ice corporation, the entire number of Voting Trustees acting as such for the time being.
(g) For consolidation of paramount ice corporation with any other corporation or corporations the entire number of Voting Trustees acting as such for the time being.
*164 (h) For the sale of the property, assets and franchises of paramount ice corporation, the entire number of Voting Trustees acting as such for the time being.
(i) For guaranteeing the bonds of another corporation or corporations, the entire number of Voting Trustees acting as such for the time being.
(j) For voluntary dissolution of paramount ice corporation, the entire number of Voting Trustees acting as such for the time being.
(k) With respect to all other votes and/or consents of stockholders (Statutory or otherwise), three-quarters (%) of the Voting Trustees for the time being.
provided, however, that the common stock of paramount ice corporation, in the name of the Voting Trustees, may in any instance be voted by three-quarters (%) of the number of Voting Trustees for the time being for any purpose, and the consent of the Voting Trustees in respect of the common stock of paramount ICE CORPORATION in the name of the Voting Trustees (statutory or otherwise) may be given in the name of or on behalf of all the voting trustees by three-quarters (%) of the number of voting trustees for the time being if such three-quarters so voting and/or consenting shall have received the written consent of such additional number of voting trustees as shall, with the said three-quarters actually voting and/or consenting, make up the required number of voting trustees in respect of the vote or consent in question in accordance with the requirements above set forth.
The claim of illegality is predicated on the premise that the agreement interferes with the free exercise of the right to vote by each stockholder in proportion to the shares of stock he owns; that the voting is not conducted on a per share basis, as required by section 55 of the Stock Corporation Law, but that it is voted on a per capita basis, and that votes are required in excess of a plurality. It is also urged that the agreement, in providing that trustees become directors, limits the powers of the directors and sterilizes them in requiring that three quarters or all of their number determine the conduct for all. In my opinion, neither of these contentions is meritorious. The trustees in voting the stock merely act as proxies or agents for the stockholders. The votes cast by them at an election, or for other purposes in which shareholders ’ votes are required, are counted on a per share basis and not per capita. There is no legal restraint on a stockholders’ agreement evincing the number of trustees necessary to vote for all.
In Spaulding v. Hotchkiss (62 N. Y. S. 2d 151, 157) the court stated: “the provisions in the trust agreement that in case
a vacancy occurred in the office of trustees the remaining trustee or trustees could and should appoint a successor to fill such vacancy and that any other powers conferred upon the trustees should be exercised only by unanimous consent of all the trustees at the time acting under the trust agreement, are legal and valid; that even if it be held to be a voting trust, it was not illegal, for under the terms of the trust the shares of the trust *165 fund could not be voted unless all three of the trustees agreed as to how the votes should be cast ”.
Nor is the provision in the agreement that the voting trustees be directors violative of public policy. A provision in a stockholders’ agreement that they will continue to vote for themselves as directors is legal. (Matter of Roosevelt Leather Hand Bag Co., 68 N. Y. S. 2d 735; Matter of Feinson, 196 Misc. 590; Matter of Kirshner, 81 N. Y. S. 2d 435; Matter of Bloch, 186 Misc. 945.) Under such an agreement directors are elected by a plurality of the votes as the statute requires (Benintendi v. Kenton Hotel, 294 N. Y. 112, 117, 118; Clark v. Dodge, 269 N. Y. 410, 415).
Further, I find no substance in the claim that the agreement by virtue of the identity of the trustees and directors sterilizes the directors and is void under the principles enunciated in McQuade v. Stoneham (263 N. Y. 323), as contended by the plaintiffs. The agreement before us does not so offend. The limitations set forth in paragraph twelfth are on the voting trustees as such in their capacities of voting the stock on such matters requiring stockholders’ action as distinguished from directorial conduct and business management and policies. As stated in the McQuade case (p. 329): “ Stockholders may, of course, combine to elect directors. That rule is well settled. As Holmes, Ch. J., pointedly said (Brightman v. Bates, 175 Mass. 105, 111): 1 If stockholders want to make their power felt, they must unite. There is no reason why a majority should not agree to keep together. ’ The power to unite is, however, limited to the election of directors and is not extended to contracts whereby limitations are placed on the power of directors to manage the business of the corporation by the selection of agents at defined salaries.”
The “vice” in the Stoneham case was “ inherent in the provisions intended to give assurance that the directors so elected would act according to the prearranged design of the stockholders in apportioning the corporate offices and emoluments of such offices among the majority stockholders ” (see opinion of Lehman, J., p„ 334).
Analysis of the items of paragraph twelfth of the trust agreement before us clearly evinces that they are a limitation or qualification of the powers granted to the trustees by paragraph first of the agreement to the effect that “the voting trustees shall for all legal purposes * s * be entitled to exercise all rights of every name and nature, including the right to vote, and to give any consent in writing, statutory or otherwise,” and in no wa^ divests the directors of any function. *166 When voting with respect to the items above set forth, the trustees exercise franchises given by statute exclusively to stockholders, upon which matters directors may not bind the corporation.
The provision in paragraph twelfth, ‘‘ Except as hereinafter otherwise specifically provided, all questions arising among the Voting Trustees from time to time (with respect to voting, with respect to giving stockholders’ consent to any corporate action or change or otherwise, or with respect to any other matter or thing),” relates exclusively to actions which the trustees could take as representatives of the stockholders. These actions could be taken only by stockholders and not by directors. The words ‘ ‘ other matter or thing ’ ’ relate to matters or things properly before the trustees as such. The further restrictions set forth in subdivisions (a) through (k) clearly relate to functions and rights left by the Stock Corporation Law with the stockholders and are not vested in the directors:
(a) relating to election of members of the board of directors (§ 55);
(b) , (c), (d) and (e) relating to changes in the capital structure and name of the corporation (§§ 36, 37);
(f) for the consent to mortgage (§ 16);
(g) for consolidation (§ 86);
(h) for the sale of franchise, property and assets (§ 20);
(i) for the guaranteeing of bonds of another corporation (§19);
(j) to secure the voluntary dissolution of the corporation (§105); subdivision (k) is not equivocal in its language that with respect to all other votes and/or consents of stockholders (Statutory or otherwise) “ %ths of the Voting Trustees for the time being.”
I conclude that the voting trust before me is not violative of any policy established by legislative or judicial fiat. Judgment •is directed dismissing the complaint, without costs.