DAL-TRAN SERVICE COMPANY, Respondent, and JACOB HARMATZ, Intervenor-Respondent, *v.* FIFTH AVENUE COACH LINES, INC., et al., Appellants, et al., Defendants.

First Department, October 24, 1961.

*David W. Peck* of counsel (*Sullivan & Cromwell,* attorneys), for Fifth Avenue Coach Lines, Inc., and another, appellants.

*Milton Pollack* for Gray Line Motor Tours, Inc., appellant.

*Roy M. Cohn* of counsel (*John A. Kiser, Albert A. Blinder, Lawrence I. Weisman, Joel S. Stern* and *Stephen Hochhauser* with him on the brief; *Saxe, Bacon & O'Shea,* attorneys), for respondent.

*Murray Gottesman* for intervenor-respondent.

*Murray I. Gurfein* of counsel (*Milton M. Rulnick* with him on the brief; *Goldstein, Judd & Gurfein,* attorneys), for Jerry Finkelstein and another, *amici curiæ.*

STEVENS, J. This is an appeal from a judgment, entered after trial, which (1) nullified the election of directors at an annual stockholders' meeting and directed a special meeting for another election under supervisors named by the court; (2) declared invalid the voting trust agreement between Fifth Avenue Coach Lines, Inc., and Bankers Trust Company, dated December 15, 1957, and the amendment thereto dated November 29, 1960; and (3) declared that the only portion of Fifth Avenue shares subject to the voting trust agreement to be voted at the special election should be the 32% derivative interest of two minority shareholders.

The appeal also brings up for review an intermediate order of the trial court which granted, at the opening of the trial, plaintiff's motion to amend the complaint to add a fourth cause of action to have the stockholders' meeting already held, declared null and void.

The original complaint sought to enjoin the holding of the May 8, 1961 stockholders' meeting (later held); the use and transmission of the management proxy statement dated March

29, 1961; the payment, funding or accruing for the benefit of Moreland and Duggan of any increase in the rate of pension benefits; and a judgment declaring that the 204,403 shares of capital stock of Fifth Avenue registered in the name of Gray Line Motor Tours, Inc. (herein called Gray Line) could not be voted or considered in determining the existence of a quorum at any stockholders' meeting of Fifth Avenue Coach Lines, Inc. (herein called Fifth Avenue) and that the voting trust agreement between Fifth Avenue and Bankers Trust Company (herein called Bankers Trust) is void.

At the opening of the trial, over objection, plaintiff was permitted to amend the complaint in several particulars and more especially to add a fourth cause of action attacking the stockholders' meeting of Fifth Avenue held on May 8, 1961, and seeking a declaration that such meeting be declared null and void and that a special meeting of stockholders be called within 30 days under the supervision of two persons appointed by the court.

Since the judgment appealed from did not pass upon the validity of the pension plan, that is not before us. We are concerned here with the validity of the election of the directors of Fifth Avenue at the meeting of May 8, 1961; the validity of the voting trust agreement of December 15, 1957, and the amendment thereof dated November 29, 1960; also, whether the trial court properly limited the voting of Fifth Avenue shares held by Gray Line to the interest held by the Gray Line minority stockholders.

Fifth Avenue is a transportation company interested primarily in mass transportation by bus, and which operates directly and through two wholly owned subsidiaries, Surface Transit, Inc. (herein called Transit) and Westchester Street Transportation Company (herein called Westchester).

Gray Line was formed in 1954 for certain stated purposes. In 1957 its 265,000 shares of capital stock were owned by two groups. Fifth Avenue owned 180,000 shares, and the remaining 85,000 shares were owned by the Finkelsteins. By means of a voting trust agreement dated December 5, 1957, between Fifth Avenue and Bankers Trust, Fifth Avenue placed its Gray Line shares in a new voting trust with Bankers Trust as trustee. The agreement sought to avoid circular voting and provided that Fifth Avenue stockholders had the right, by majority vote, to designate their choice for directors of Gray Line. Thus, it was stated that the Fifth Avenue shares held by Gray Line should be considered to be held proportionately by the public shareholders of Fifth Avenue and the minority shareholders of

Gray Line. Each holder of Fifth Avenue shares other than Gray Line was deemed for this purpose, in addition to his direct ownership, to hold a portion of the remaining Fifth Avenue shares held by Gray Line. The modification of November 29, 1960, now under attack, gave the right to designate the directors of Gray Line to the stockholders of Fifth Avenue to the extent of their stock ownership, exclusive of Gray Line and its stockholders. The minority owners of Gray Line shares were no longer permitted to vote for Fifth Avenue directors.

The annual meeting for the election of the directors of Gray Line is generally held approximately one week before the annual meeting for the election of directors of Fifth Avenue. After such election the directors of Gray Line, a majority of whom in fact serve also on the board of Fifth Avenue, decide how to vote the Fifth Avenue stock at Fifth Avenue's annual meeting. The Gray Line meeting was held prior to the meeting of Fifth Avenue which was held on May 8, 1961, and that meeting of Gray Line and the actions there taken are not here under attack.

Since the majority interest of Fifth Avenue shares of stock held by Gray Line, as evidenced in the voting trust, were not voted at the meeting of May 8, 1961, we need not consider such nonaction in determining the validity of the meeting and the election of directors there held.

While this is basically and primarily a struggle for control of Fifth Avenue, it is worthy of note that no rival slate of directors was proposed by anyone, including the plaintiff, at the meeting of May 8, 1961. Thus the only choice afforded the voting stockholder was to vote for management's slate of directors or none at all.

On this appeal Fifth Avenue contends that the meeting of May 8, 1961, and the election of directors thereat was valid, that the court lacked jurisdiction to nullify the election of directors because of a noncompliance with section 25 of the General Corporation Law and that the 1957 voting trust and the 1960 amendment thereto are valid.

Gray Line asserts it was disenfranchised in its right to vote the Fifth Avenue stock owned by it; that its ownership of the capital stock of Fifth Avenue, its rights flowing therefrom, and the value of its assets are impaired by the judgment appealed from.

The respondent Dal-Tran, a substantial stockholder, urges that the facts established at the trial require a new meeting and election; and that the judgment below is in all respects equitable, just and correct.

All parties concede that the meeting of May 8, 1961 was confused. A reading of the minutes of such meeting convinces this court that the events which transpired reflect credit upon neither of the parties. However, confusion alone would not serve to vitiate the elections or invalidate the meeting.

Generally, it may be said that an election will be set aside because of (1) the illegality of the meeting at which the election was held; (2) basic irregularity and material errors in the conduct of the election; and (3) fraud in the solicitation of the proxies. (See, generally, 12 N. Y. Jur., Corporations, §§ 722–729; Aranow and Einhorn, Proxy Contests for Corporate Control, pp. 444–465.)

Since it appears from the record that the statutory requirements and the requirements of the by-laws of Fifth Avenue as to notice, etc., in the calling of the meeting were complied with, and from additional facts appearing in the record, we conclude that the holding of the meeting at which the elections were conducted was legal. Special Term in effect so found also by refusing to enjoin the holding of the meeting.

Respondent asserts there was a fraudulent concealment of the 1955 waivers of Moreland and Duggan as to the proposed pension plan, and that the heavy financial losses sustained in the operation of Fifth Avenue for the first quarter of 1961 were not revealed in the proxy material sent out. It argues that there was fraud in the solicitation sufficient to warrant setting aside the election.

There is no common-law right on the part of a member of a stock corporation to vote by proxy. That right is given by statute in New York (General Corporation Law, § 19). For fraud and concealment in proxy solicitations the courts have power to vitiate and set aside an election, for the stockholders are the real owners of the corporation. (See *Matter of Wyatt* v. *Armstrong*, 186 Misc. 216.) And those who seek proxies of their fellow shareholders assume a fiduciary relation. (*Matter of Wyatt* v. *Armstrong, supra*, p. 219; *Willoughby* v. *Port*, 182 F. Supp. 496, 499, mod. 277 F. 2d 149.) Proxies wrongfully obtained may be challenged by the persons who gave the proxies (*Segal* v. *Bresnick,* 30 Misc 2d 569) or those affected by it (*Matter of Hoe & Co.* [*Cullom — Rein*], 14 Misc 2d 500, affd. 285 App. Div. 927, affd. 309 N. Y. 719).

Not every misrepresentation is material nor every concealment fraudulent. While the fraud may consist of acts of omission as well as of commission, the proxy statement complained of is to be examined carefully to determine if it is so "inadequate, incomplete, misleading, unfair [that it] did not

fairly inform the stockholders of all the material facts'' (see *Seagrave Corp.* v. *Mount*, 112 F. Supp. 330, 334 [Ohio], affd. 212 F. 2d 389), and the alleged misrepresentation affected the result of the election (*Matter of Doeskin Prods.*, 7 A D 2d 42, 46), or that an inequitable result has been produced (*Matter of Hoe & Co.* [*Cullom—Rein*], *supra*, p. 505).

The burden is upon the party seeking to have the proxies declared invalid to establish their right to relief by a preponderance of the evidence (*Continental Bank & Trust Co.* v. *200 Madison Ave. Corp.*, 43 N. Y. S. 2d 402). '' [I]t is not necessary to show that a substantial number of stockholders was actually deceived * * * petitioner is entitled to the court's interposition upon a reasonable showing that they might have been.'' (*Matter of Hoe & Co.* [*Cullom—Rein*], *supra*, p. 505.)

An examination of the proxy statement in question here reveals that there was information given concerning the pension plan. While it did not state forthrightly that the annual benefits to Moreland under the new plan would be $35,100 upon retirement, and $27,500 to Duggan, rather than $13,500 and $16,000 as under the 1955 pension agreement, it did give calculations which (with some knowledge of the 1955 provisions which had in 1955 been sent out to stockholders) would have led to those figures. The proxy statement set forth '' approval by stockholders is not required.'' Such statement is not challenged seriously.

It is correct, as respondent contends, that the losses sustained by Fifth Avenue during the first quarter of 1961 were not set forth in the proxy statement. There is no proof that it had been the custom in other years to reveal first-quarter losses prior to each annual meeting. In fact there is testimony to the contrary. Nor are we aware of any rule by the Securities and Exchange Commission which requires such a quarterly report. Thus, the mere fact that, in this instance, the losses sustained were substantially greater than those sustained in the first quarter of recent years, would not, without more, warrant the conclusion that there was fraudulent concealment. Conceivably circumstances could exist where the failure to disclose, or a willful misrepresentation of the true financial condition, would constitute a breach of trust or fraud on the shareholder. We are not faced with either situation here.

*Matter of Skora* v. *Great Sweet Grass Oils Ltd.* (30 Misc 2d 572) may be readily distinguished. In that case the court found both fraudulent omissions as well as active fraudulent misrepresentation of material facts. The reasonable, and indeed almost the inevitable conclusion flowing from such a condition,

was that the breach of the fiduciary duty and the failure to disclose was of such substance that it wrongfully misled the stockholder and influenced the outcome of the election.

Here, there was no fraud by way of concealment of material facts in the solicitation of the proxies sufficient to produce an inequitable result or to lead reasonably to the conclusion that a substantial number of stockholders were so misled or affected that the result of the election would have been altered had such information been made available.

The question remaining for consideration before we determine if sufficient reason exists to set aside the election is whether there were such errors and irregularity in the conduct of the election as to warrant the court's interference in the internal affairs of Fifth Avenue.

As pointed out, both sides concede there was confusion in the meeting of May 8, 1961. That simple fact will not justify the court's interference unless from such circumstance we may reasonably conclude that stockholders' votes were illegally accepted or improperly rejected (*Matter of Robert Clarke, Inc.*, 186 App. Div. 216; *Matter of Mount Vernon Dye Casting Corp.*, 127 Misc. 169); there was an unfair deprivation of the shareholder's right to make known his choice (*Matter of Ideal Mut. Ins. Co.*, 9 A D 2d 60); or " right, justice and fair play require a new election " (*Matter of Bogart*, 215 App. Div. 45, 46; *Matter of Kaminsky*, 251 App. Div. 132, 140). (See, also, Aranow and Einhorn, Proxy Contests for Corporate Control, pp. 448–449.)

In this case, testimony at the trial and a reading of the minutes of the proceeding reveal that opportunities were given to vote, though some refused to cast their ballots; that an opportunity was given to nominate other candidates for directors, though the sequence in the matter of procedure might be debatable, and that very few persons were in fact disenfranchised, whether intentionally or otherwise. There is no persuasive evidence that the result was affected or that the outcome would have been different if there had been an absence of confusion. This view is buttressed by the fact that there was no opposition slate offered.

The judgment appealed from, insofar as it nullified the election of directors and directed a special meeting for another election, should be reversed on the law and the facts.

Nor do we find there was any vested right in the minority stockholders of Gray Line to vote independently and directly for the directors of Fifth Avenue. Gray Line and Fifth Avenue were separate corporate entities and there was no vested right in the minority stockholders of Gray Line to participate directly

in the internal affairs of Fifth Avenue. The fact that they might have had what has been termed a "pass-through" right to share in the voting for Fifth Avenue directors under the 1957 voting trust agreement, was a right given without consideration and in an effort to head off any objections of circular voting. The giving of the right was gratuitous and its revocation could be accomplished without penalty or even doing violence to equitable principles.

Insofar as the 1960 amendment to the voting trust deprived the minority stockholders of Gray Line of any right to participate directly in the election of Fifth Avenue directors, that provision is valid.

One major issue remains for consideration and that has to do with the validity of the trust agreement. Respondent contended, and the trial court held, that the voting trust agreement of 1957, and the 1960 modification, were invalid.

Section 50 of the Stock Corporation Law, provides for voting trust agreements. "The test of validity is the rule of the statute." "No voting trust not within the terms of the statute is legal and any such trust, so long as its purpose is legitimate, coming within its terms is legal." (*Matter of Morse* [*Bank of America*], 247 N. Y. 290, 298.) A voting trust agreement established pursuant to section 50 is prima facie valid if it does not contravene "any express charter or statutory provision or contemplate some fraud, oppression or wrong against other stockholders or creditors." (*Mannheimer* v. *Keehn*, 30 Misc 2d 584, 588, mod. [but trust held valid] 268 App. Div. 813, mod. 268 App. Div. 845; cf. *De Marco* v. *Paramount Ice Corp.*, 30 Misc 2d 158.) In *Manson* v. *Curtis* (223 N. Y. 313, 319–320) the principle stated above was announced and applied to a stockholders' agreement (which did not constitute a voting trust agreement), to pursue a common course in voting their stock, though in the *Manson* case the agreement was held illegal because, *inter alia*, it withdrew from the directors of the corporation the control and direction of corporate affairs and business which the law and statutes vested in them. In other words it was a sterile board of directors. For an excellent discussion on voting trusts (see Ballantine, Law of Corporations, §§ 184–184c; 11 N. Y. Jur., Corporations, § 447 *et seq.*).

Examination of the voting trust agreement of 1957 reveals that it complies structurally with the requirements of the statute (Stock Corporation Law, § 50) and violates no provision of the by-laws of Fifth Avenue. Since no charter or statutory provision is violated, the presumption of validity attaches.

It is necessary to look further to ascertain if the agreement contemplates, by its terms, fraud, oppression or wrong against other stockholders, or if it violates any other provision of law. In this connection we might review the charge of circular voting as an alleged violation of law.

One of the avowed purposes of the agreement is to avoid the charge of circular voting, i.e., voting power in the directors of Fifth Avenue to vote for the directors of Gray Line. To accomplish this, Fifth Avenue transferred its shares of Gray Line to Bankers Trust as trustee. The trustee was empowered to vote for Gray Line's directors as directed by the majority of the voting shareholders of Fifth Avenue. In the absence of such direction the trustee was empowered to exercise its own discretion at the annual meeting. However, the agreement provides that at special meetings of Gray Line the trustee shall act independently of any voice or wish of the shareholders of Fifth Avenue.

In light of these provisions the question arises also whether the agreement is designed to freeze control in the managing group of Fifth Avenue as an end in itself, which might be objectionable, or merely aims to assure stability and continuity of management for the benefit of the stockholders, a legitimate objective. There is no evidence here, beyond the bare assertion, that the declared aim of the provisions of this agreement is other than for the benefit of the stockholders. Where two constructions are possible, in the absence of persuasive evidence to the contrary the court will adopt that interpretation which gives validity to the provision. (Cf. *People ex rel. New York Cent. & Hudson Riv. R. R. Co.* v. *Walsh,* 211 N. Y. 90, 100; *Manson* v. *Curtis,* 223 N. Y. 313.)

While the net result is to consolidate the control of Fifth Avenue with the control of Gray Line, such consolidated control could only be accomplished by obtaining the favorable vote of the majority of the votes cast by the publicly-held shares of Fifth Avenue. Thus, circular voting, which is of doubtful validity in New York, is avoided. Nor, in our view, is *Lazenby* v. *International Cotton Mills Corp.* (174 App. Div. 906, affd. 226 N. Y. 645) clear authority in support of the validity or the invalidity of circular voting. A reading of the Referee's report and the disposition by the appellate courts support this view.

There is no presumption by reason of the operating terms of the agreement, that it will operate oppressively in favor of the dominant group of shareholders, and against the interest of the minority. Nor does the record reasonably lead to the

conclusion that such, in fact, is the result flowing from the existence or operation of the agreement.

There is no charge of fraud at the inception of the agreement in 1957, and apparently from that period to the present all parties concerned worked amiably under its provisions. The shareholders of Fifth Avenue have at all times been made aware of the existence of the trust, and contrary to depriving them of any rights, a possible benefit has been conferred by giving them an indirect voice in the management of Gray Line.

Accordingly, the judgment appealed from should be reversed on the law and the facts as herein indicated, with costs to the appellants and the complaint dismissed.

BREITEL, J. P., EAGER, STEUER and NOONAN, JJ., concur.

Order and judgment unanimously reversed on the law and on the facts, with costs to the appellants and complaint dismissed. [Oct. 24, 1961.]

Order and judgment unanimously reversed on the law and on the facts, with costs to the appellants and complaint dismissed. Settle order on one day's notice. The order of this court entered October 24, 1961, is vacated. [Republished 14 A D 2d 764.]