ELBERT RENCH, Plaintiff-Appellee, v. LEORA P. LEIHSER, Defendant-Appellant.

Fifth District   No. 5—84—0816

Opinion filed January 3, 1986.—Rehearing denied March 26, 1986.

Robert K. Adrian, of Pollock, Ennis & Heck, of Quincy, for appellant.

Meyer & Meyer, of Greenville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Leora Leihser, appeals from a judgment of the circuit court of Bond County granting specific performance of a stock purchase agreement found to govern shares of Loyd Trucking Corporation stock owned by her late husband, Robert Leihser. That judgment or-

ders defendant, as executrix of Robert Leihser's estate, to transfer his 24 shares of Loyd Trucking stock to plaintiff, Elbert Rench, the corporation's largest surviving stockholder. The transfer is to take place on payment to defendant by plaintiff of $27,652.69, which sum represents the value of Robert Leihser's shares, minus certain setoffs, as determined by the circuit court.

In her appeal, defendant contends that the stock purchase agreement is no longer valid and binding. Alternatively, she argues that the circuit court's valuation of Robert Leihser's shares, and its allowance of setoffs, are contrary to the manifest weight of the evidence. For the reasons set forth below, we reverse.

Loyd Trucking Corporation was purchased by Robert Leihser; plaintiff, Elbert Rench; and Claude Mullen in February of 1955. Each of these three individuals owned 16⅔ shares, or one-third, of Loyd Trucking Corporation's total of 50 shares of stock. On November 26, 1956, the three executed the stock purchase agreement at issue here. The agreement provided that if any of the three either wished to sell his shares or died, that person's shares had to be sold to and purchased by the remaining shareholders. The agreement also established a procedure for setting the sale price of the stock and required the principals to purchase insurance on one another's lives in order to provide funding for any sale made necessary by a shareholder's death.

There is no dispute that Claude Mullen sold all of his Loyd Trucking Corporation shares in 1961. One-half of these shares was purchased by Robert Leihser, the other half by plaintiff, Rench. Leihser and Rench, in turn, each assigned one share of stock to his respective spouse. As a result, the 50 shares of Loyd Trucking stock were distributed as follows: Robert Leihser, 24 shares; Elbert Rench, 24 shares; defendant Leora Leihser, one share; and Mrs. Rench, one share. No further sales, transfers, or assignments of the stock were made.

Twenty years later, in 1981, Robert Leihser died. Plaintiff wanted to purchase Leihser's shares and began negotiations with defendant, but no agreement could be reached as to sale price. After attempts to resolve the dispute through a panel of arbitrators proved unsuccessful, plaintiff filed his one-count complaint seeking to compel sale of the stock through specific performance of the original 1956 stock purchase agreement. Following a bench trial, the circuit court found that the stock purchase agreement was still valid and enforceable and granted plaintiff's request for specific performance of that agreement under the terms previously noted. This appeal followed.

■ As a general matter, restrictions upon the right to transfer shares of corporate stock are permissible provided that those restric-

tions are reasonable and not contrary to any law or public policy. (See, *e.g., People ex rel. Rudaitis v. Galskis* (1924), 233 Ill. App. 414, 420; Annot., 69 A.L.R.3d 1327 (1976); 18 C.J.S. *Corporations* sec. 391, at 924-26 (1939).) Where, as here, the shares are not available on the open market and have no market value, agreements imposing permissible restrictions on their transfer or sale may be enforced by specific performance. (*Arensten v. Sherman Towel Corp.* (1933), 352 Ill. 327, 340, 185 N.E. 822; *Smurr v. Kamen* (1921), 301 Ill. 179, 188, 133 N.E. 715.) A circuit court's decision in specific performance will not be disturbed absent an abuse of discretion, or unless it is against the manifest weight of the evidence. (*Stender v. National Boulevard Bank* (1983), 114 Ill. App. 3d 1041, 1046, 449 N.E.2d 873, 876.) Specific performance cannot, however, be demanded as a matter of right. The evidence necessary to support a decree for specific performance must be clear, explicit and convincing. (*Wolford v. James E. Kolls Investment Co.* (1978), 61 Ill. App. 3d 405, 408, 377 N.E.2d 1314, 1317.) Moreover, because stock purchase agreements constitute a restraint on the otherwise free alienation of the parties' shares, they must be strictly construed. *Vogel v. Melish* (1964), 31 Ill. 2d 620, 624-25, 203 N.E.2d 411, 413.

■ Applying these standards to the Loyd Trucking Corporation's stock purchase agreement, we find the circuit court's conclusion that the agreement is still valid and specifically enforceable to be contrary to the manifest weight of the evidence. Paragraph 9(c) of the agreement expressly provides that it shall terminate "by sale by a stockholder during his life as herein provided.". Paragraph 7 similarly includes "sale of stock during the life of the stockholder" as constituting termination of the agreement. We note that these provisions refer to sale by *a* shareholder. Their plain language thus contemplates that when shares are sold by any shareholder, the agreement shall terminate as to all shareholders. This construction is supported by other terms of the agreement. Paragraph 2 provides that while the agreement is in effect, each stockholder must assign his stock in blank and deposit the share certificates with the secretary of the corporation. Under paragraph 4, however, once a shareholder sold his shares and received payment for them, the secretary was obligated to turn the share certificates over to the purchaser. Allowing the purchaser to obtain the certificates in this manner obviously eliminates the mutual protection afforded the original signatories to the agreement and is flatly inconsistent with the notion that the agreement was to continue after a sale had been consummated.

Here, there was unquestionably a sale by a stockholder, Claude

Mullen, made during his lifetime. That the agreement terminated with this event, 20 years before the death of defendant's husband, would therefore seem to follow as a matter of course. The circuit court resisted this conclusion, however, reasoning first that although a sale did take place, no evidence was presented that the sale was made in accordance with the terms of the agreement (*i.e.*, "as herein provided") as required by paragraph 9(c). This analysis is untenable.

Although there was indeed no direct evidence that the shares were sold according to the specified technicality for notice, valuation, assignment of insurance policies and transfer of share certificates, there is no doubt that the essential purpose of the agreement, ensuring that the remaining shareholders retained equal control over the corporation, was fulfilled. When Mullen sold out, Robert Leihser and plaintiff Rench were each able to purchase Mullen's shares in amounts proportionate to their existing holdings, precisely as contemplated by the agreement. Because they owned equal numbers of shares, they were each able to purchase half of Mullen's stock, leaving each of them with half ownership of the corporation.

More importantly, paragraph 2 of the agreement specifies that "No certificate of stock subject to this agreement shall be assigned, encumbered or otherwise disposed of during the continuance of this agreement except as provided herein." If Mullen's shares were transferred in a manner other than that provided in the agreement, presumably some challenge would have been raised earlier. Yet, for the next 20 years, neither Robert Leihser nor plaintiff Rench questioned the ownership rights of the other in Mullen's stock as being in contravention of the agreement. Indeed, by attempting to purchase Leihser's shares from his executrix and seeking to compel sale of those shares through this suit, plaintiff Rench implicitly concedes that the Mullen sale was proper and effective to transfer Mullen's shares to Leihser and Rench as provided in the purchase agreement. Under these circumstances, we necessarily conclude that the sale of Mullen's shares complied in all material respects with that agreement and that any technical defects in the sale had long since been waived by the parties.

■ A second reason given by the circuit court for continuing to recognize the validity of the agreement, despite the Mullen sale, was its finding that the parties continued to abide by its terms until Robert Leihser's death. Because of the apparent ambiguity as to what constituted "termination" within the meaning of the agreement, the circuit court properly admitted extrinsic evidence on this question. (See *Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 263, 364 N.E.2d 939, 943.) The evidence so adduced,

however, contradicts the circuit court's findings.

As previously noted, Leihser and Rench each assigned one share of Loyd Trucking stock to his respective spouse after Mullen sold out. Had the original purchase agreement remained in effect, such assignment would have been prohibited by paragraph 2. Paragraph 2 also required that share certificates be signed in blank with a notation on their face as to applicability of the purchase agreement, and that they be deposited with the corporation's secretary. After 1961, when Mullen sold out, the certificates were not signed in blank, did not bear the required notation and were not deposited with the corporate secretary. Paragraph 3 of the agreement provided that the parties were to file annual stipulations as to the price at which any shares would be sold. No such stipulations were in fact filed. Finally, paragraph 6 provided that the parties would insure one another's lives in order to guarantee funding for any sale to surviving shareholders made necessary by a shareholder's death. Plaintiff Rench testified, however, that prior to Leihser's death, both he and Leihser cashed in or borrowed on all insurance policies they had together, including the original 1956 policies, and divided up the proceeds.

To be sure, defendant did accept 20 weekly payments from plaintiff totaling $5,000 after Robert Leihser's death, and she did designate an arbitrator to help determine a price for sale of her husband's shares to plaintiff. But these facts show no more than that defendant was willing to sell her husband's shares to plaintiff. They hardly establish that she was under any contractual obligation to do so. Considering the language of the 1956 stock purchase agreement itself and the conduct of Robert Leihser and plaintiff Rench subsequent to their purchase of Mullen's stock, we simply cannot accept the circuit court's conclusion that the agreement continued to be valid. The manifest weight of the evidence points to the opposite conclusion: the agreement terminated in 1961, when Mullen sold out. For this reason the circuit court erred in granting specific performance of the agreement, and its judgment is hereby reversed. In light of this disposition, we need not reach defendant's additional arguments concerning the valuation of her husband's shares or the allowance of setoffs in the sale of those shares.

Reversed.

KASSERMAN, P.J., and JONES, J., concur.