ROBERT L. SCHNEIDERMAN, Indiv. and as Voting Trustee, Plaintiff and Counterdefendant-Appellant, v. HELEN KAHALNIK, as Ex'x of the Estate of Yale Kahalnik, Deceased, Defendant-Appellee (Stanley Brill *et al.*, Defendants and Intervenors and Counterplaintiffs-Appellees).

First District (3rd Division) No. 1—88—1143

Opinion filed June 27, 1990.

Rosemarie J. Guadnolo and Brian D. Vandenberg, both of Chicago, for appellant.

Alvin D. Meyers and Keith M. Kanter, both of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff and counterdefendant-appellant, Robert L. Schneiderman (Schneiderman), appeals from a judgment of the circuit court of Cook County entered in favor of defendant-appellee Helen Kahalnik and defendants and intervenors and counterplaintiffs-appellees Stanley Brill, Estelle Brill and Luv-A-Cup Coffee Service, Ltd. (Helen and Brill), at the close of Schneiderman's case in a bench trial for declaratory judgment and specific performance. On appeal, Schneiderman contends that (1) the trial court erred in entering judgment in favor of defendants at the close of his case; (2) the trial court erred in excluding relevant evidence; and (3) the trial court abused its discretion in denying his motion to reopen discovery. We affirm.

In 1967, Schneiderman and Yale Kahalnik (Kahalnik), became partners in the coffee service business. The partners formed Alpha Coffee Company in 1967 and Luv-A-Cup Coffee Service, Ltd. in 1972. Schneiderman and Kahalnik each owned 50% of Alpha Coffee Company, an Illinois corporation. Schneiderman and Kahalnik each held a 40% interest in the New York based Luv-A-Cup. Brill joined Luv-A-Cup as its New York based vice-president and manager in 1973, and as of 1977, he owned 20% of the outstanding stock of the company.

In March 1981, Schneiderman and Yale signed an agreement by which the parties intended to create a voting trust (VTA), which would allow one of the parties to maintain control of Luv-A-Cup in

the event of the other party's death. The VTA was prepared by attorney Robert Jacobs of the now defunct Chicago law firm of Friedman and Koven. The document was signed by both parties, but the procedural steps required under New York law to effectuate the VTA, *e.g.*, the reissuance of stock certificates to Schneiderman and Kahalnik as trustees, the issuance of voting trust certificates to the partners as beneficiaries of the voting trust, or the filing of the agreement in the corporation's books and the notification of other shareholders, were never completed. Neither Schneiderman nor Kahalnik made any attempt to effectuate the VTA during the over 2½-year period following its signing on March 27, 1981, and Kahalnik's death on December 31, 1983.

Following Kahalnik's death, both Brill and Schneiderman made stock purchase offers to his widow, Helen. Schneiderman offered Helen $140,000 for the purchase of the stock. When Schneiderman learned that Helen intended to call a shareholder's meeting at which she planned to vote Kahalnik's stock, he wrote her a letter within which he tendered certificates representing his shares in Luv-A-Cup, and demanded that they be reissued to him as voting trustee and recorded on the books of the corporation with the appropriate certificates issued to him. In addition, Schneiderman demanded that Helen deposit with him, as trustee, all the stock certificates representing Kahalnik's shares in Luv-A-Cup. Helen decided to sell her husband's stock to Brill for $190,000. After the stock purchase, Brill became president and owner of 60% of the outstanding stock of Luv-A-Cup.

Following Schneiderman's disclosure of the VTA to Luv-A-Cup's corporate counsel, Arthur Handler (Handler), Handler reissued Schneiderman's stock in trustee form. Several days later Schneiderman filed this legal action seeking declaratory judgment as to the validity of the VTA and an order compelling Helen to specifically perform the VTA's terms and transfer Kahlanik's shares to him. After pretrial discovery was closed, Brill filed a motion for leave to amend the pleadings to add Luv-A-Cup as a defendant and to amend his answer by adding certain new affirmative defenses. Brill's motion was granted. In response, Schneiderman moved to reopen discovery and to compel the deposition of his former attorney, Jacobs. Following a hearing, the court denied the motion. Schneiderman later made another request for additional discovery and that motion was also denied. At the close of Schneiderman's case in chief, the trial court granted the defendants' section 2—1110 motion for judgment in their favor. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110.) This appeal followed.

On appeal, Schneiderman first contends that the trial court erred in entering judgment in favor of defendants at the close of his case. We disagree.

■■ ■ The grant or denial of declaratory relief is discretionary. Absent an abuse of discretion, the trial court's determination will not be disturbed on appeal. (*Feeley v. Michigan Avenue National Bank* (1986), 141 Ill. App. 3d 187, 190, 490 N.E.2d 15, 17.) Nevertheless, the trial court's exercise of this discretion is subject to a searching appellate review and is not given the same deference as is the trial court's exercise of discretion in other contexts. (*Feeley*, 141 Ill. App. 3d at 190-91.) A circuit court's decision in specific performance will not be disturbed absent an abuse of discretion or unless it is against the manifest weight of the evidence. (*Rench v. Leihser* (1986), 139 Ill. App. 3d 889, 487 N.E.2d 1201, 1202-03.) Specific performance cannot, however, be demanded as a matter of right. The evidence necessary to support a decree for specific performance must be clear, explicit and convincing. *Rench*, 139 Ill. App. 3d at 891.

■■ In ruling on a defendant's motion for judgment in its favor, at the close of the plaintiff's case in a bench trial, pursuant to section 2—1110 of the Civil Practice Law, the court should use a two-step analysis. The court should first consider whether a *prima facie* case has been presented, and if so, it should then weigh the evidence to determine if the *prima facie* case still exists. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45; *Stender v. National Boulevard Bank* (1983), 114 Ill. App. 3d 1041, 1046, 449 N.E.2d 873, 876.) If the ruling is favorable to the defendant, the court should enter a judgment dismissing the action. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110; *Kokinis*, 81 Ill. 2d at 154.) On appeal, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *Stender*, 114 Ill. App. 3d at 1046.

The policy of New York State law is to give recognition to voting trusts created by a transfer of stock in a corporation from stockholders by their free and voluntary act. (*DeMarco v. Paramount Ice Corp.* (1950), 30 Misc. 2d 158, 163, 102 N.Y.S.2d 692, 698.) Further, a voting trust agreement established pursuant to the New York Business Corporation Law is *prima facie* valid if it does not contravene any express charter or statutory provision or contemplate some fraud, oppression or wrong against stockholders or creditors. *Dal-Tran Service Co. v. Fifth Avenue Couch Lines, Inc.* (1961), 14 A.D.2d 349, 354, 220 N.Y.S.2d 549, 557.

Section 621 of the New York Business Corporation Law provides in pertinent part:

"Voting trust agreements

(a) Any shareholder or shareholders, under an agreement in writing, may transfer his or their shares to a voting trustee or trustees for the purpose of conferring the right to vote thereon for a period not exceeding ten years upon the terms and conditions therein stated. The certificates for shares so transferred *shall* be surrendered and cancelled and new certificates therefor issued to such trustee or trustees stating that they are issued under such agreement, and in the entry of such ownership in the record of the corporation that fact *shall* also be noted, and such trustee or trustees may vote the shares so transferred during the term of such agreement.

(b) The trustee or trustees *shall* keep available for inspection by holders of voting trust certificates at his or their office or at the place designated in such agreement or of which the holders of voting trust certificates have been notified in writing, correct and complete books and records of account relating to the trust, and a record containing the names and addresses of all persons who are holders of voting trust certificates and the number and class of shares represented by the certificates held by them and the dates when they became owners thereof. The record may be in written form or any other form capable of being converted into written form within a reasonable time.

(c) A duplicate of every such agreement *shall* be filed in the office of the corporation and it and the record of voting trust certificates holders *shall* be subject to the same right of inspection by a shareholder of record or a holder of a voting trust certificate, in person or by agent or attorney, as are the records of the corporation under section 624 (Books and records; right of inspection, prima facie evidence). The shareholder or holder of a voting trust certificate shall be entitled to the remedies provided in that section." (Emphasis added.) N.Y. Bus. Corp. Law §621 (McKinney 1986).

In the present case, prior to issuing its ruling, the trial court stated that it had not only reviewed all the relevant pleadings and admissions, and its copious notes taken during the presentation of Schneiderman's case, but also that it considered the demeanor of the witnesses, the weight and credibility of their testimony and the quality of the evidence. The court specifically found the testimony of Schneiderman to be incredible. The court therefore concluded that based upon all the evidence and the court's analysis thereof, Schneiderman

failed to present the evidence necessary to support a declaratory judgment in his favor.

The court further noted that although the alleged VTA was signed by Schneiderman and Kahalnik, the document contained blank portions. The court noted that Schneiderman testified that after the document was signed, he placed the VTA in a drawer without either filling in the blank portions or completing any of the other procedural steps required to effectuate a VTA under New York law. Based on the foregoing, the court found that Schneiderman had woefully failed to prove that he had complied with the New York statutory requirements for perfecting a VTA.

■■ After review of the record and relevant law, we cannot find that the judgment of the trial court was either an abuse of discretion or against the manifest weight of the evidence. The record reveals that because the VTA in question concerned the stock of a New York corporation, the laws of that State govern its validity. Further, section 621 of the New York Business Corporation Law allows the creation of VTAs, but requires that shareholders who desire to create a VTA do so by (1) surrendering their stock for cancellation and reissuance in the name of the trustee; (2) recording the existence of the voting trust agreement on the corporate books; and (3) filing a duplicate VTA in the office of the corporation.

In the present case, none of the aforementioned steps were taken prior to Kahalnik's death. Although Schneiderman attempted to effectuate the VTA by turning over his shares for reissuance and demanding that Helen likewise turn over Kahalnik's stock, Kahlanik himself never effectuated the VTA during his lifetime. Even though VTAs are allowed under New York law, they are not valid and enforceable absent a showing that they were created (1) by a free and voluntary transfer of stock and (2) in accordance with State statute. Schneiderman failed to demonstrate either a free and voluntary transfer of stock by Kahalnik prior to his death or compliance with the statutory requirements for creation of a VTA. In light of this evidence, Schneiderman clearly failed to establish by clear and convincing evidence his right to either declaratory judgment in his favor or specific performance of the VTA. We therefore conclude that the trial court did not err in dismissing Schneiderman's cause of action and entering judgment in the defendants favor at the close of his case in chief.

■■ Schneiderman next contends that the trial court erred in excluding relevant evidence. We disagree. In determining relevancy, the trial court must consider the evidence in the light of factual issues

raised by the pleadings and it is not error to exclude testimony which does not bear on the specific issues under consideration. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 498, 464 N.E.2d 751, 758.) The determination of what is relevant is largely within the discretion of the trial court and reversal of its decision is not warranted absent an abuse of that discretion. *Carlyle*, 124 Ill. App. 3d at 498.

Schneiderman contends that the trial court should have allowed the admission of evidence regarding his understanding of the effect of certain pledges and proxies on Brill's ownership of Luv-A-Cup stock. He argues that his state of mind was relevant to show why he did not act to effectuate the VTA after it was signed. Schneiderman further contends that the fact he and perhaps even his lawyer were unaware that there were additional steps necessary to completely effectuate the VTA was relevant and should have been admitted in evidence at trial. Schneiderman further complains of the exclusion of evidence tending to demonstrate the lack of corporate formality in Luv-A-Cup operations, the routine practices between him and Kahalnik, and the circumstances surrounding Helen's sale of Kahalnik's stock to Brill.

The specific issues which were raised by the pleadings in this case were (1) was the VTA in question a valid and enforceable agreement under New York law and (2) if so, was Schneiderman entitled to specific performance of the VTA. Accordingly, the trial court properly allowed evidence on the issue of whether the parties had complied with the terms and requirements of the New York statute governing creation and execution of VTAs. Since the beliefs, opinions and/or understanding of one of the parties to the VTA or their counsel is not probative of the issue of statutory compliance, the trial court appropriately excluded admission of that evidence. Likewise, the routine activities of Schneiderman and Kahalnik, the lack of corporate formality within the organization and the circumstances surrounding Brill's purchase of Kahalnik's stock were not probative of the trial issues. We therefore conclude that the trial court did not abuse its discretion in excluding the complained-of portions of evidence proffered by Schneiderman.

Schneiderman finally contends that the trial court abused its discretion in denying his motion to reopen discovery. We disagree. The right to discovery is limited to disclosure regarding matters relevant to the subject matter involved in the pending action. (*Mistler v. Mancini* (1983), 111 Ill. App. 3d 228, 232, 443 N.E.2d 1125, 1128.) A trial court does not abuse its discretion in denying discovery of a

subject not relevant to the action. (*United Nuclear Corp. v. Energy Conversion Devices, Inc.* (1982), 110 Ill. App. 3d 88, 104, 441 N.E.2d 1163, 1174.) The trial court has broad discretionary power to ensure fair and orderly trials, and it can restrict pretrial discovery where probative value is lacking. (*United Nuclear Corp.*, 110 Ill. App. 3d at 105.) In addition, the court has the discretion to deny late motions for discovery of remote matters that might have been discovered earlier. (*Harris Trust & Savings Bank v. Chicago College of Osteopathic Medicine* (1983), 116 Ill. App. 3d 906, 912, 452 N.E.2d 701, 706.) A trial court's orders concerning discovery will not be disturbed on appeal absent a manifest abuse of discretion. An affirmative showing of abuse must be clearly demonstrated by an appellant. *Mistler*, 111 Ill. App. 3d at 233.

■ In the present case, Schneiderman through his newly appointed counsel moved to compel the redeposition of Jacobs. Jacobs had been previously deposed, but Schneiderman's former counsel elected not to question him. Schneiderman's new attorney sought to redepose Jacobs because he had allegedly agreed to provide information to Schneiderman's former counsel on a voluntary basis, but was no longer willing to cooperate. Jacobs, via a motion to quash Schneiderman's notice of deposition, informed the court that he had been contacted by new counsel for Schneiderman who requested that he either submit to an additional deposition or provide a sworn affidavit. Jacobs further informed the court that he had been previously deposed for approximately seven hours and that he had never agreed to supplement his sworn testimony by affidavit or a second deposition. Following a hearing on the motion, the court denied the motion to compel Jacob's deposition. In light of the fact that Schneiderman had a prior opportunity to depose Jacobs, we find no error in the trial court's denial of Schneiderman's motion for a new deposition.

In his motion to reopen discovery, Schneiderman argued that, "[t]he generous leave allowed defendants in extensively augmenting their pleadings, and in adding Luv-A-Cup as a party defendant, all after the discovery cutoff, has worked to substantially prejudice plaintiff's ability to obtain the discovery necessary for trial."

On appeal, Schneiderman argues that the court's denial of his motion foreclosed any inquiry into Jacob's understanding of section 621 of the New York Business Corporation Law and that he was prevented from discovering evidence from Luv-A-Cup. Schneiderman's contentions are rendered meritless by the fact that Jacob's understanding of section 621 of the New York Corporation Law was not at issue and the fact that as president of Luv-A-Cup prior to Brill's

election, he had full access to all corporate records. In addition, because judgment was granted in favor of defendants at the close of Schneiderman's case, no evidence was presented on defendants' affirmative defenses. In light of these facts, we find the trial court's denial of Schneiderman's motion to reopen discovery to have been a proper exercise of its discretion.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CERDA, P.J., and WHITE, J., concur.