96 A.2d 233 (1953)
HAUTH
v.
GIANT PORTLAND CEMENT CO. et al.
Court of Chancery of Delaware, New Castle.
April 15, 1953.
James R. Morford and William Marvel (of Morford, Bennethum & Marvel, Wilmington, and Leo Brady (of Gordon, Brady, Caffrey & Keller), New York City, for plaintiff.
David F. Anderson (of Berl, Potter & Anderson), Wilmington, and A. O. Dawson (of Dorr, Hand & Dawson), New York City, for defendants.
BRAMHALL, Vice Chancellor.
Plaintiff sought to enjoin defendant corporation and certain of its officers and directors from proceeding with the election of directors at the annual meeting of stockholders. Plaintiff alleged in his complaint that he had been a member of the board of directors of defendant corporation since 1941; that he had always been elected as a result of management proxies mailed to stockholders; that the proxies were in the form of general powers of attorney and did not set forth a proposed slate of directors; that the stock of defendant corporation was not listed on any exchange and therefore it had been unnecessary for the management to comply with the rules and regulations of the Securities and Exchange Commission relative to proxy solicitation by the *234 management; that in accordance with its customary practice the board of directors duly authorized certain officers of the corporation to mail to each stockholder a written notice of the annual meeting of stockholders to be held at the office of the corporation in Wilmington, Delaware, enclosing a form of proxy, a copy of a proposed underwriting contract setting forth a refinancing plan to be submitted by the directors for the approval of the stockholders, with a covering letter from the president explaining this plan; that, although plaintiff, along with the other directors, at a meeting of directors approved the resolution, he later objected to the refinancing plan and as a result of plaintiff's objection the board of directors rescinded the plan; that at a further meeting of the directors held on March 11, 1953, over the objection of plaintiff, a slate of directors including all of the old directors with the exception of plaintiff and adding two new directors (one to replace plaintiff and another to replace a deceased director) was approved; that at the time of the approval of this slate stockholders representing a large majority of the outstanding voting stock of the corporation had sent their proxies to the management committee.
Plaintiff alleged that his name was omitted from the board of directors solely because of the fact that he opposed the proposed refinancing plan advocated by the officers and other directors of the corporation; that the president and all the other directors were affiliated with the financial concerns engaged to do the underwriting and would receive large profits therefrom.
Defendants denied that the name of plaintiff was omitted from the list of stockholders for whom the management proxies would be voted because of the fact that plaintiff was opposed to the refinancing plan, asserting that this plan was rescinded by the board of directors by reason of plaintiff's statement that he could produce a better and less expensive plan. Defendants also averred that they withdrew their support from plaintiff because plaintiff had been surreptitiously opposing the management of the corporation and had endeavored to solicit proxies from other stockholders for the purpose of electing a complete new board of directors opposed to the present management, a situation concerning which they had no direct information until after the notice of the annual meeting of stockholders and the original proxies were mailed to stockholders.
The sole question for my determination is whether the defendant corporation, through its officers and directors, other than plaintiff, acted improperly in failing to reveal to the stockholders the intention not to re-elect plaintiff as a director.
At the time of the meeting on March 11, 1953, when the board of directors passed the resolution omitting the name of plaintiff from the list of directors approved by management, the management proxy solicitation was practically complete. The stockholders were not notified of the action of the board of directors until after the institution of these proceedings. The letter which was sent as a result of the resolution calling the meeting of stockholders did not give the names of the directors which the management proposed to support by means of the proxies which it would receive, nor did it state that the proxies would not be voted for the plaintiff, nor that they would be voted for the other directors. Plaintiff's claim is based upon the fact that since these proxies had always been voted for the entire board of directors since 1941, the stockholders had a right to assume, unless advised to the contrary, that the proxies would again be voted for the entire board of directors.
Perhaps it would have been better practice for the management to have stated in this letter the names of the persons for whom the proxies would be voted. I have no doubt that at the time of the solicitation of the proxies it was the intention of the management to re-elect the entire board of directors, including the plaintiff. The circumstances resulting in the desire on the part of management not to include plaintiff's name occurred after the sending of the letter and the original proxies.
Assuming the allegations of plaintiff to be correct, there is nothing therein which would justify the issuance of a preliminary *235 injunction. While it is true that the stockholders were not advised until after the institution of this suit that the management had made a change in the names of persons who would be voted for as directors, the corporation itself has not been injured. It is well established that a preliminary injunction enjoining the holding of a corporate meeting or the election of directors will not be granted unless the denial thereof would cause an "irreparable injury". Hand v. Missouri-Kansas Pipe Line Co., D.C.Del.1944, 54 F.Supp. 649; Aldridge v. Franco-Wyoming Securities Corp., 26 Del.Ch. 213, 26 A.2d 544. See also 5 Fletcher Cyc. Corp., Section 2071. The proceedings calling for the annual stockholders' meeting were entirely regular. The notice was in accord with the practice followed since 1941. As far as is shown, it may be presumed that it was the intention of the management at the time of the sending of these notices to vote for the entire board of directors. Whether I accept plaintiff's or defendants' contention as to the reason for the change in the determination of the management relative to the naming of the plaintiff as a member of the board of directors, there is no evidence of fraud. In the absence of fraud the fact that the management failed to notify the stockholders of its intention to vote the proxies which it received for someone other than the plaintiff is not sufficient ground to warrant the issuance of a preliminary injunction. See Atterbury v. Consolidated Coppermines Corp., 26 Del.Ch. 1, 20 A.2d 743. See also McLain v. Lanova Corporation, 28 Del.Ch. 176, 39 A.2d 209.
The case of Atterbury v. Consolidated Coppermines Corp., supra, is quite similar to the present case. In that case the president and vice-president of the corporation made certain charges against those in charge of the operation of one of the mines of the corporation. Upon investigation by the board of directors these charges were found to be without merit. On the day preceding the stockholders' meeting the defendants removed the president and vice-president as officers of the corporation. In an effort to invalidate the election on the ground that the proxy implied that the same officers would continue in office, the court held that the board of directors represented the management of the corporation and that there was no representation which would justify the shareholders in expecting either that the defendants would continue the same persons as officers or choose others in their stead. While it is true that, as stated in the Atterbury and other cases in this state, the board of directors constitutes the management of the corporation,  and in this respect the Atterbury case is distinguished from the present case,  the logic is the same in both cases. In both the Atterbury case and in the present case,  the action of the board of directors was caused by something which occurred almost immediately prior to the meeting of stockholders and after the solicitation of proxies had been sent out. In both cases, it was contended that by reason of the fact that notice was not given to stockholders of any proposed change the stockholders were misled. True, in the present case, plaintiff was a director, a part of the management, but the dropping of one director and the substitution of another person in his place does not represent a change in management. Certainly the management of a corporation, in the absence of any statement or representation to the stockholders to the contrary, may exercise its discretion. When it determines that the actions of a director are contrary to the best interests of the corporation, its determination, under the circumstances of this case, should not be enjoined by preliminary injunction. See McLain v. Lanova Corporation, supra.
The person designated in a proxy has a fiduciary obligation to carry out the wishes of the stockholders to the best of his ability. However, it will be presumed that what the attorney does in the proper exercise of the power conferred expresses the will of the stockholders. Hexter v. Columbia Baking Co., 16 Del.Ch. 263, 145 A. 115. The proxies were solicited by the management. The authority was unrestricted. It is not established that there was any misrepresentation or fraud in their solicitation. It must be assumed that the stockholders expected that their proxies *236 would be voted in accordance with the wishes of the majority of the board of directors, since they represent the management.
I conclude that the application for a preliminary injunction should be dismissed.