Charles A. Loreto, J.
This proceeding is brought under section 25 of the General Corporation Law, which provides as follows: “Upon the application of any member aggrieved .by an election, and upon notice to the persons declared elected thereat, the corporation and such other persons as the court may direct, the supreme court at a special term thereof shall forthwith hear the proofs and allegations of the parties, and confirm the election or order a new election, as justice may fequire.”
Petitioners are (1) the lawfully elected directors of Ideal Mutual Insurance Company (“Ideal”) who were serving as directors prior to the purported annual meeting of the members of Ideal on May 20, 1959, and (2) National Dairy Products Corporation (“ National Dairy ”), a member of Ideal, its sponsor and its principal policyholder.
This proceeding has been brought to set aside the election or purported election of directors and the election of officers of Ideal Mutual Insurance Company held on May 20, 1959. The respondents are the directors elected or purportedly elected at the said meeting, of whom respondent Ryan is a member and guiding spirit.
A motion has been brought on: (1) for an order dismissing the proceeding on the ground that sufficient facts are not stated justifying an adjudication under section 25 of the General Corporation Law that said election was invalid and a new election should be ordered; (2) also for an order vacating that portion of an ex parte order granted by Mr. Justice Epstein under date of June 3, 1959 which, in substance, required that there be made available to petitioners “a list of names and addresses of the members of Ideal Mutual Insurance Company on May 20,1959 ’ ’, or, in the alternative, limiting such requirement to the names and addresses of the members whose votes were cast by proxy on May 20, 1959; and (3) for a further order vacating that portion of such order made by Mr. Justice Epstein as enjoins Ideal from issuing new policies of insurance except for required renewals.
The petition asserts that James M. Ryan and Thomas R. Gallagher, president and secretary of Ideal, respectively, were authorized by the board of directors of Ideal to serve as a proxy committee at the annual meeting of the members of Ideal *129 to be held on May 20, 1959; that in flagrant violation of their fiduciary duties (a) to the board of directors of Ideal, (b) to the National Dairy and subsidiaries, as members of Ideal and as policyholders contributing the most substantial part (98.52%) of Ideal’s premium income, and (c) to other policy holders of Ideal, secretly, deceitfully and fraudulently, and in excess of their authority as members of the management proxy committee, they purported to and did elect a new and different board of directors of Ideal at the said meeting; that this was done pursuant to an illegal conspiracy between them and others to capture the control and management of the assets and business of Ideal for their own personal and selfish purposes, and that these persons purportedly elected at the said meeting as officers and directors are acting in cle facto control of the officers, assets, records and business of Ideal.
It will be helpful to recite briefly the history and facts leading to the said election. Petitioner National Dairy, a- Delaware corporation authorized to do business in New York State, is engaged in the manufacture, processing and distribution of diversified lines of dairy and other food products through the United States with subdivisions for Kraft Poods, Sealtest Poods and Breakstone Poods. Ideal was incorporated under the Insurance Law of the State of New York in November, 1944 and it commenced operations in December, 1944. It was organized for the purpose of transacting the business of casualty insurance on the mutual plan. Its organization was financed and sponsored by National Dairy as a means of providing casualty insurance including workmen’s compensation insurance for itself and its subsidiaries. Since National Dairy divisions are located in many different States, Ideal qualified to do business in 33 States and the District of Columbia. Through 1958 National Dairy, its subsidiaries and affiliates paid net premiums to Ideal in excess of $32,000,000, which constituted 98.52% of all net premiums received by Ideal. On December 31, 1958, Ideal had assets in excess of $10,000,000 and a surplus of more than $3,800,000 and its investment portfolio had a value in excess of $8,880,000 in readily marketable securities.
All of the insurance written by Ideal has been in behalf of National Dairy, its subsidiaries and affiliated companies and their employees, with the exception of risks undertaken through various assigned risk pools as required by the laws and regulations of several States. National Dairy has over 44,000 employees and places with Ideal most of its workmen’s compensation insurance and most of its public liability insurance covering *130 its very large fleet of vehicles. Some employees • of National Dairy (over 400) have placed their personal automobile liability insurance with Ideal.
Upon the organization of Ideal, Ryan, who had been insurance manager of National Dairy, became president of Ideal as well as one of its directors, and acted in the dual capacities mentioned for both corporations.
It is important to note the established regular practice with respect to the annual meetings of Ideal. Since its organization it has been its regular practice, approved by its board of directors, for Ideal to send out notices of annual meetings of members enclosing forms of proxies naming Ryan and Gallagher, the president and secretary of Ideal, as a proxy committee. These notices did not state the names of the persons for whom the proxies would be voted. Since its inception the board of directors of Ideal has been composed entirely of persons also employed as executives of National Dairy and, except for interim replacements and substitutions, each year at the meeting of the members of Ideal the management proxy committee, composed of Ryan and Gallagher, voted the proxies it received for the election of the nominees of the board of directors of Ideal and for no other. For the meeting of May 20, 1959 a notice of the meeting soliciting proxies as in the past designating Ryan and Gallagher as proxy committee was mailed. All of the foregoing facts have not been controverted. Relying on Ryan in his capacity as trusted manager of its insurance department to vote its proxy for the incumbent directors, National Dairy had no representative other than Ryan present at said meeting. No person who had been a member of the prior board of directors of Ideal, except Ryan, was present. Nor is there any denial of this assertion by the petitioners.
Contrary to the understanding and intention of the board of directors of Ideal and of the officers and directors of National Dairy, at said meeting of May 20, 1959 Ryan used the proxies which had been entrusted to him to vote into office a new slate of directors excluding those then in office (excepting himself). Relying upon their belief that the persons holding office on the board of directors of Ideal would be re-elected at the said meeting of members and continued in office, according to the past practice, and in anticipation thereof, a notice of meeting of the said directors to be held immediately or shortly following the meeting of members was sent out to them with notice to and knowledge of Ryan. Also relying thereon, National Dairy mailed to the voters of Ideal who were also members of its company and affiliates, a letter stating “ it will not be necessary *131 for any member to send a representative to attend the meeting in person.”
Petitioners assert that if they had any intimation that Ryan would take, at the meeting of the members of Ideal, action hostile to the interests of National Dairy and the board of directors of Ideal, it would have done whatever would have been required to oppose Ryan’s secret and disloyal intention and action. However, Ryan’s secrecy, concealment and deceit lulled them into an unawareness of a necessity or occasion for them to do so and deprived them of the opportunity to so act. Petitioners also - assert that they would have communicated with other members of Ideal to present their recommendations and have brought to their attention facts pertinent to a choice of directors and taken other action to protect their own interests and the interests of other members.
Accordingly, petitioners state that they are aggrieved by and complain of the purported ‘ ‘ illegal elections of directors and officers of Ideal on May 20,1959 and the acts of those presuming to act by virtue of said elections ’ ’ and pray the said elections be declared illegal and have no effect and be set aside and that the persons presuming to act by virtue of such elections be enjoined and restrained from acting as such and that a new election of directors be ordered and that inspectors for such election be appointed by the court.
Annexed to the petition are the affidavits of officers of three subsidiaries of National Dairy asserting that they were deceived by the action of Ryan at the meeting of May 20, 1959 and join in the petition. There is also set forth an affidavit giving a list of the names and addresses of 290 policyholder members of Ideal, all of whom are also employees of National Dairy who wish to join in the petition.
The answer of the respondents, in essence, states that by the proxies they had been given complete and unqualified authority to exercise all the powers which they themselves could exercise if personally present; that hence those who gave the proxies were under no obligation if they had been personally present to vote for the former directors. Respondents also assert that National Dairy has less than 3% of the voting power of the members of Ideal and that this proceeding is one intended to make Ideal a captive company of National Dairy. In his affidavit in support of the motion to dismiss the petition, Ryan expresses a concern for the voting rights of members of Ideal not affiliated with National Dairy and submits that those rights are properly the subject of concern by this court in this proceeding. He does not deny the prior practice and procedure in connection with the voting at the annual meetings of mem *132 bers, nor does he deny what he caused to take place at the meeting of May 20,1959 was without the consent and knowledge of officers and directors of National Dairy and the other officers of Ideal or that he had concealed from them his intent to bring about what he did at that meeting.
Although National Dairy currently pays over 95% of the annual premiums received by Ideal, its voting power has become less than 3% of the voting power of the members of Ideal. This came about by reason of a simplification of the corporate structure of National Dairy and the merger of most of its subsidiaries into the parent company after 1944. In the beginning National Dairy and its subsidiaries and affiliates had all the voting power of Ideal. Later, because of the merger, Ideal gained new members who were either employees of National Dairy or risks assigned to Ideal by insurance departments of various States.
There is no question that the election was regular in form. No issue is taken with the accuracy of the corporation’s books and records which, under section 25 of the General Corporation Law, must generally be accepted as conclusive on the validity of the election.
Ryan had entertained a strong opinion that Ideal should take other risks of insurance and. extend its volume of business. This was opposed by . the officers of both National Dairy and Ideal. Ryan maintains that the position taken with respect to Ideal by the prior officers and directors through the years was contrary to the spirit and the letter of the Insurance Law under which it was incorporated. However, it is pointed out, provisions of the enabling law and of the corporate charter indicate only the permissible extent and scope of its business and that it is not a mandatory requirement upon the board of directors to undertake every class of business which it may have the legal power to conduct and that the only mandatory requirement in the statute is the acceptance of assigned “ risks ” resulting from the compulsory automobile insurance law. Moreover, petitioners’ attorneys plausibly argue that it should remain within the competence and discretion of the board of directors to determine within a corporate scope of power how far its business operations should be extended.
On the admitted and conceded facts gathered from the affidavits, exhibits and briefs on this application and proceeding, it is clear to the court that the election of May 20, 1959 of directors and directors for Ideal was brought about by reason of a concealment by Ryan which was tantamount to a mis *133 representation on his part. There is no doubt in the court’s mind that his conduct was a flagrant betrayal of the trust and confidence that had been placed in him by the officers and directors of National Dairy and his associate officers of Ideal. Despite the fact that in his opinion what he did was for laudable purposes and allegedly for the benefit of “ other' members ” of Ideal not associated with National Dairy, its affiliates and subsidiaries, in the opinion of the court it was reprehensible and unconscionable. There is much to indicate that his action was guided by self-interest rather than the ideal motive that he ascribes to it. The fact that his views with respect to the extension of the business of Ideal which were in conflict with those of the other controlling officers of both National Dairy and Ideal, in addition to the fact that he was about to be retired because of age with a pension less than desired by him, are significant facts which cast some doubt upon the motives ascribed by him for his conduct at the election.
In the light of the facts hereinbefore stated, the members of Ideal were denied their freedom, to oppose Eyan’s action (see Matter of Wyatt v. Armstrong, 186 Misc. 216, Hofstadter, J.). Much in point is the case of Matter of Bogart (215 App. Div. 45, 46) where the court stated: “We are further of the opinion, however, that right and justice require a new election. Because of the long-continued practice at prior annual meetings which had been generally acquiesced in and for which some color of authority may be found in the by-laws, the great mass of members felt no direct interest in the meeting and took no part therein. A small body of protestant members were thus able, by exercising their strict legal rights, to take control. Under the circumstances, therefore, the membership at large has had no fair opportunity to express its choice.” Under the circumstances of this case the entire membership of Ideal has had no fair opportunity to express its choice respecting the election of directors at the said meeting.
Eyan’s argument that the proxy gave him an. unrestricted right and authority to vote as he chose is patently false in the light of the facts in this case, and likewise his assertion that the minutes of the past annual meetings reflecting the statement that he voted the proxies exercising full discretion is belied by the fact that the directors elected on those occasions were not those of his choosing.
Eyan’s attempted justification of his action at the said election by asserting that the continued operations of Ideal as in the past in not expanding its business to fake additional risks is *134 contrary to the spirit of section 317 of the Insurance Law is rejected. His contention is wholly beside the point at issue, which is — was the election a fair one? By this argument he purports to arrogate to himself a claim of a fiduciary duty to parties not in existence as members of Ideal — prospective risks of insurance which may never be assumed by Ideal — overlooking the present and existing fiduciary duty owing to petitioners.
All the evidence in this record points to the conclusion that Ryan’s betrayal of his allegiance to the petitioners deprived them, as well as potentially interested members of Ideal, of any fair notice of his intent to bring about a radical change in the management policy of the company and to seize for himself and his associates its control from those in whose hands it had remained and prospered for many years.
Apropos is the language found in Hauth v. Giant Portland Cement Co. (33 Del. Ch. 496, 501) where the court stated: ‘1 The proxies were solicited by the management. The authority was unrestricted. It is not established that there was any misrepresentation or fraud in their solicitation. It must be assumed that the stockholders expected that their proxies would be voted in accordance with the wishes of the majority of the board of directors, since they represent the management.”
Ryan misused the proxies of National Dairy, its subsidiaries, affiliates and employees. ‘ ‘ It would be flying in the face of the simplest conception of justice to say that an agent could, without informing his principal, use the authority of his agency to commit the principal to an act done by the agent solely in his own peculiar personal interest. * * * A person acting as proxy for another is but the latter’s agent and owes to the latter the duty of acting in strict accord with those requirements of a fiduciary relationship which inhere in the’conception of agency.” (Rice & Hutchins v. Triplex Shoe Co., 16 Del. Ch. 298, 309 [1929], affd. 17 Del. Ch. 356.)
It cannot be said that the election should not be upset because the votes of National Dairy, its subsidiaries and affiliates would have been insufficient to bring about a different result for they should have had the opportunity and had the right to express and convey their views with respect to the election and any slate of directors to be elected to all the voters of Ideal, to interest them in the election and to alert them as to its consequences. The court indeed would be naive to believe that if petitioners had been aware of Ryan’s intent and plan, and had a fair opportunity to express and convey .their views to all the *135 voters of Ideal, tbe result of the election would necessarily have been the same. There is no doubt that the petitioners are “aggrieved” within the meaning of section 25 of the General Corporation Law.
The case of Matter of Faehndrich (2 N Y 2d 468) cited by respondents and heavily relied upon by them to sustain the election, is distinguishable and not controlling authority of the facts at bar.
The respondents’ motion to dismiss the petition is hereby denied in all respects.
Both parties to this proceeding have submitted on the argument and in their briefs that enough is shown and established on this record, and the court agrees, to justify a determination of the matter without an oral hearing.
Upon the facts clearly established on the record herein, the court concludes that the basic principles of fair play and justice require the granting of the relief prayed for in the petition. Accordingly, it is hereby ordered that the election or purported election of directors and officers of Ideal on May 20, 1959 be and the same is hereby vacated and set aside and a new election of such officers and directors is hereby ordered. Adopting the suggestion made by the petitioners herein, the court will designate inspectors to supervise the new election when held.
Respondents are directed to turn over forthwith to the persons who were the officers and directors of Ideal prior to the meeting of May 20,1959, all books, records, property and assets of the said corporation that have come into their possession and control.
Submit order.