In the Matter of IDEAL MUTUAL INSURANCE COMPANY. NATIONAL DAIRY PRODUCTS CORPORATION et al., Respondents; JAMES M. RYAN et al., Appellants.

First Department, September 22, 1959.

*Charles H. Tuttle* of counsel (*Lloyd V. Almirall, Lewis F. X. Cotignola* and *Stuart H. Johnson, Jr.*, with him on the brief; *Breed, Abbott & Morgan*, attorneys), for appellants.

*William Piel, Jr.*, of counsel (*Dennis C. Mahoney* with him on the brief; *Sullivan & Cromwell*, attorneys), for National Dairy Products Corporation and others, respondents.

*Per Curiam.* This is a proceeding brought under section 25 of the General Corporation Law to set aside the election of directors and officers of Ideal Mutual Insurance Company, who were chosen at the annual meeting on May 20, 1959. Special Term granted the motion, on the papers and without a formal hearing, vacated the election, reinstated the prior officers and directors, and ordered a new election under court supervision. Respondents appeal.

The findings contained in the comprehensive opinion at Special Term (18 Misc 2d 127) are fully justified by the record, and the undisputed facts that can be distilled from the affidavits submitted by both sides warranted the granting of the relief requested without further hearing. The papers spell out a plan successfully executed by the respondent president and secretary of the company to solicit proxies from policyholders on behalf of management, through designating themselves as a proxy committee. These proxies were then used, without any prior notice, to oust the incumbent directors and vote a new slate into office. This was found to be an unfair deprivation of the right of the member policyholders to make a real expression of choice.

Under the circumstances, the secretive measures carefully worked out by the president to conceal any indication of his already formed intention to use the management proxies to oust the incumbent board and seize power for himself were tantamount to fraudulent misrepresentation. There had been a long-established and unvarying course of dealing between management and policyholders in the solicitation and use of management proxies. Although the proxies were unrestricted in form, the past practices and maneuvering of the officers constituting the proxy committee must have led members who returned them to the proxy committee to believe that such proxies would be voted in favor of, rather than against the continuance of the incumbent management (*Hauth* v. *Giant Portland Cement Co.*, 33 Del. Ch. 496).

The respondents disarmed the other directors and officers by sending out a notice prior to the election to all incumbent directors, informing them that a meeting of the board would take place shortly after the election. The inevitable implication of this notice was that all directors would be re-elected. This ruse thwarted the opportunity of a potent and articulate group to furnish the voting policyholders with their arguments for retention of management. There can be no doubt the conspirators, intent upon this corporate coup, were aware of and

relied upon the fact that presumably the members approved of management and its policies. But although the proxy committee donned the management mantle in soliciting members, it was all the while definitely committed to a drastic change in the policies and personnel presumably favored by those members. One wonders if the committee would have used the management imprimatur if business had been bad, and management in disfavor with the policyholders.

If the proxy committee, in soliciting such proxies, knew that the long-established practice was not to be followed, and lulled the unwitting members into believing otherwise, then they deprived them of their opportunity to make a knowledgeable choice of the management they wished to represent them (*Matter of Bogart*, 215 App. Div. 45, 46). The duty owed by the president was a duty to *all* the policyholders, and not merely to the National Dairy Products Corporation, which was the organizer and principal policyholder of the insurance company, whose employees were the incumbent directors, and which had placed respondent Ryan in his position as Ideal's president.

In *Matter of Faehndrich* (2 N Y 2d 468), where the petitioner sought to vacate an election under section 25 on the claim that he had no prior notice that he was going to be removed as an officer and director, there was no solicitation of proxies by management involved. The Court of Appeals held that the notice of a special stockholders' meeting to elect directors was adequate and fair. Any new meeting would have produced exactly the same result, since the respondent owned an absolute majority of the stock. A different obligation of disclosure is involved in proxy solicitation than that involved in formal notices of meeting.

*Matter of Benkert* v. *Metz* (6 A D 2d 1031, motion for leave to appeal denied 5 N Y 2d 710) presented this court with a factual situation superficially similar to the instant case, but in that case there were enough votes cast to oust some of the incumbent directors even without the inclusion of the proxies solicited on behalf of management. Therefore, a new vote could have made no difference in the result. Here, however, all the votes cast were on behalf of the proxies secured by the purported management proxy committee. Disclosure of the president's intent to oust management and seize control himself might well have led to a different outcome. Moreover, in the *Benkert* case (*supra*) only three of seventeen directors were replaced, while here the intention was to oust virtually the entire board. Special Term here correctly held that the policyholders should

be given a real chance to express their views. The order appealed from should be unanimously affirmed, with costs to petitioners-respondents, and a new election of directors is directed to be held on October 14, 1959. Should any party desire a further extension of the date of said election, application therefor may be made upon the settlement of the order to be entered herein.

BOTEIN, P. J., BREITEL, M. M. FRANK, VALENTE and STEVENS, JJ., concur.

Order unanimously affirmed, with costs to petitioners-respondents, and a new election of directors is directed to be held on October 14, 1959. Should any party desire a further extension of the date of said election, application therefor may be made upon the settlement of the order to be entered herein.