In the Matter óf VICTOR M. CARTER et al., Petitioners-Appellants, v. VICTOR MUSCAT et al., Respondents-Respondents, and REPUBLIC CORPORATION, Respondent.

First Department, July 9, 1964.

*Ben Herzberg* of counsel (*Howard A. Heffron* and *Frederick F. Greenman, Jr.,* with him on the brief; *Hays, Sklar & Herzberg,* attorneys), for petitioners-appellants.

*Roy M. Cohn* of counsel (*Royall, Koegal & Rogers,* attorneys for R. L. Huffines, Jr., and Alex Shuford, Jr.; *Saxe, Bacon & O'Shea,* attorneys for Victor Muscat and Edward Krock), for respondents-respondents.

*Arthur B. Kramer* of counsel (*Feldman, Kramer, Bam & Nessen,* attorneys), for respondent.

STALEY, JR., J. Petitioners, as stockholders of Republic Corporation, have instituted a proceeding pursuant to the provisions of section 619 of the Business Corporation Law to invalidate the election of certain named directors of the corporation on the ground that their election on July 11, 1963 was illegal. This is an appeal from an order entered May 21, 1964 dismissing the petition as legally insufficient.

Prior to July 11, 1963 the Board of Directors of Republic Corporation was controlled by William Zeckendorf, Sr., and interests identified with him, who owned 237,698 shares of the common stock of Republic Corporation, which was approximately 9.7% of the total outstanding stock. The board of directors consisted of 11 members and the Zeckendorf interests controlled 6 out of the 11. On July 11, 1963 the Zeckendorf interests entered into a written agreement for the sale of their stock to B. S. F. Company which provided for the delivery and payment for the stock on July 12, 1963. The corporation held a meeting of the board of directors on July 11, 1963 and the six Zeckendorf directors resigned seriatim and, as each director resigned, the remaining members of the board unanimously elected a B. S. F. Company nominee as substitute director in the place of the resigned director.

On July 12, 1964 B. S. F. Company paid for and received delivery of the 237,698 shares of stock at a purchase price of $11 per share, which price was substantially the market price although slightly higher. On July 27, 1963 the petitioner Carter, as president of the corporation, made an interim report to the stockholders of the company disclosing the facts concerning purchase of stock by the B. S. F. Company and reported the election of the six new directors, naming them and referring to them as " all men of outstanding executive ability in a wide range of industrial fields ".

In the 1963 annual report of the corporation issued in the early part of 1964 the petitioner Carter again referred to the election of the six new directors in July of 1963. The annual meeting of the stockholders of the corporation was held on April 8, 1964 and, pursuant to the provisions of the by-laws which provide for staggered terms for directors elected to the board, three vacancies for directorships were to be filled at the annual meeting. In connection with the annual meeting to be held on April 8, 1964, the corporation issued a notice of meeting with a proxy statement dated March 6, 1964 which set forth the stock ownership of B. S. F. Company totaling 290,045 shares or 11.82% of the total outstanding stock and further detailing the election of the six new directors on July 11, 1963 and stated

that they " constitute a majority of the Board of Directors and represent a material change in the management and control of the corporation." The proxy statement further named the nominees for election as directors at the annual meeting to be held on April 8, 1964, two of whom were the nominees of B. S. F. Company elected on July 11, 1963. At the annual meeting all of the directors nominated for election were unanimously elected by the stockholders.

The appellants contend that the sale of stock to B. S. F. Company on July 11, 1963 did not vest in B. S. F. Company a working control of the corporation and, therefore, the substitution of directors by nominees of B. S. F. Company and the transfer of control of the board of directors to such nominees was illegal and their election should be invalidated.

Since 1961 the block of stock acquired by B. S. F. Company on July 11, 1963 had represented working control of the corporation. The total outstanding shares of common stock of the corporation was 2,453,483. Even though for a period of years ownership of approximately 10% of the stock was sufficient to effect control of the board of directors, it cannot be said as a matter of law that such percentage would continuously be sufficient to maintain control. In *Matter of Caplan* v. *Lionel Corp.* (20 A D 2d 301, 303) this court held that the transfer of 3% of the outstanding stock of Lionel Corporation was insufficient to constitute a transfer of working control of the corporation and stated: " The underlying principle is that the management of a corporation is not the subject of trade and cannot be bought apart from actual stock control (*McClure* v. *Law*, 161 N. Y. 78). Where there has been a transfer of the majority of the stock, or even such a percentage as gives working control, a change of directors by resignation and filling of vacancies is proper ".

When a situation involving less than 50% of the ownership of stock exists, the question of what percentage of ownership of stock is sufficient to constitute working control is likely to be a matter of fact, at least in most circumstances. Section 619 of the Business Corporation Law provides for hearing the proofs and allegations of the parties in a proceeding brought pursuant to that section and, if the instant proceeding had been timely brought, the proper procedure to determine the issues would be to hold a hearing to determine if ownership of stock represented by the respondents constituted a working control of the corporation.

The conduct of the corporation in apprising its stockholders of the transfer of control of the board of directors on July 11, 1963 by means of the interim report of July 27, 1963; the annual

report distributed in early 1964; and the notice of meeting and detailed proxy statement dated March 6, 1964, adequately and fairly brought to their attention the manner in which control had been transferred and the fact that such control would be continued by the election of Rynberk and Corrington, the nominees of B. S. F. Company at the annual meeting on April 8, 1964. There was no fraud or concealment and those two directors were elected at that meeting without protest.

Under these circumstances no stockholder can claim to have been deceived or misled by the change of control of the board of directors which took place on July 11, 1963 and the failure of the petitioners to act within a reasonable period of time and subsequent to the annual stockholders' meeting is sufficient to support a dismissal of their petition.

Section 619 of the Business Corporation Law endows the court with broad equitable powers to direct a new election of directors where the election under review is " so clouded with doubt or tainted with questionable circumstances that the standards of fair dealing require the court to order a new, clear and adequate expression of the security holders' will." (*Matter of Wyatt* v. *Armstrong,* 186 Misc. 216, 220.)

The stockholders' indorsements of the B. S. F. Company's nominees at the annual meeting with full knowledge of all the facts attending their original election establish a clear and adequate expression of the stockholders' wishes.

Accordingly the order appealed from dismissing the petition and denying the temporary relief sought by the petitioners should be affirmed, on the law and the facts, with costs to the respondents-respondents.

BREITEL, J. P., EAGER and STEUER, JJ., concur.

Order, entered on May 21, 1964, dismissing the petition and denying the temporary relief sought by petitioners, unanimously affirmed, on the law and on the facts, with $20 costs to respondents-respondents.