In the Matter of HERBERT J. SCHMIDT, JR., Appellant. MAGNETIC HEAD CORPORATION, Respondent.

HERBERT J. SCHMIDT, JR., Appellant, v MAGNETIC HEAD CORPORATION et al., Respondents.

Second Department, November 14, 1983

**APPEARANCES OF COUNSEL**

*Berg & Duffy* (*James P. Duffy, III, Donald F. Leistman* and *Walter J. Gumersell* of counsel), for appellant.

*Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P. C.* (*John P. Cleary, William V. Alesi* and *Eugene S. R. Pagano* of counsel), for respondents.

**OPINION OF THE COURT**

GIBBONS, J.

These appeals and the events leading up to the 1981 annual meeting of the Magnetic Head Corporation are closely associated with another case, *Schmidt v Magnetic Head Corp.* (97 AD2d 151 [decided herewith]). For the sake of orderly exposition, a review of the facts and proceedings in that case, as well as those in this one, is necessary.

Appellant, Herbert J. Schmidt, Jr., and his wife Barbara were the principal stockholders in MCP Corporation, a Delaware corporation, up until April 30, 1978. On that date, respondent Magnetic Head Corporation, a publicly traded New York corporation, acquired MCP by exchanging 47.5% of its issued shares for all of the MCP shares. By the terms of this acquisition appellant and his wife became the owners of 45.8% of the issued shares of Magnetic Head Corporation (hereinafter Magnetic Head), the largest stockholder interest. Appellant himself owns 32.3% of Magnetic Head.

Despite the large percentage of Magnetic Head shares owned by the Schmidts, they did not move into a controlling position. On April 30, 1978, the acquisition date, they entered into a shareholders' agreement with Magnetic Head and the other former MCP Corporation shareholders, who, by dint of the acquisition, were now Magnetic Head shareholders. The shareholders' agreement required each stockholder to sign an irrevocable proxy and designated James North, Charles Rockwell and Royce McKinley as proxy holders. North was the Schmidts' attorney. Rockwell was and is Magnetic Head's chief executive officer and chairman of its board of directors, while McKinley was and is president of Santa Anita Consolidated, Magnetic Head's largest preacquisition shareholder.

According to the shareholders' agreement, it is to "remain in effect for five (5) years * * * or for the period during which Charles S. Rockwell shall be actively engaged in the management of the Company, whichever is longer, but in no event for a period in excess of ten (10) years". The proxy holders have, according to the agreement, "the exclusive right to vote all Shares subject to the provisions of this Shareholders Agreement * * * for whatever purposes and in any and all proceedings * * * wherein the vote or written consent of shareholders of the Company may be required or authorized by law". However, the agreement goes on to provide that "during any period in which Herbert J. Schmidt, Jr., and Barbara B. Schmidt * * * are the holders of 30% or more of the common shares of the Company the Proxy Holders shall vote the Shares for the election of Herbert J. Schmidt, Jr., Barbara B. Schmidt and James North for election as Directors and for determining the number of directors at not more than nine (9)". The proxy holders are also signatories to the shareholders' agreement.

Three years after the acquisition, on April 30, 1981, North resigned both as a proxy holder and as a director. The shareholders' agreement provides that, in the event of North's death, incapacity, or resignation as a proxy holder, appellant, Herbert J. Schmidt, Jr., could select a replacement. The agreement does not explicitly state what should happen if North resigned as a director. When North re-

signed both positions, a conflict arose between Schmidt and the majority group of the board of directors, headed by Rockwell, as to who had the authority to select North's replacement on the board. The board of directors, against the wishes of Schmidt, elected one Edward Gleason to fill the vacancy. The dispute as to this position on the board of directors led to the first action (see *Schmidt v Magnetic Head Corp., supra*), in which, among other things, the Schmidts request specific performance, construction and reformation of the shareholders' agreement, all seeking a direction that the Schmidts may designate North's successor as a director. Alternately, the Schmidts ask that the shareholders' agreement be rescinded on the ground that a material element of the agreement was their power to designate a successor to North on the board of directors, and, without that element, there was no meeting of the minds. This court, in its opinion decided herewith, has held that the causes of action for reformation and rescission will survive a motion to dismiss (*Schmidt v Magnetic Head Corp., supra*).

Magnetic Head held its annual meeting on October 6, 1981. Prior thereto, the board of directors, under the control of the Rockwell majority, solicited the proxies of stockholders in favor of: (1) a slate of eight directors, including the board's nomination to replace North; (2) an amendment to the articles of incorporation to double the number of authorized common stock from 6,000,000 to 12,000,000 at 10 cents par value; and (3) an amendment to authorize 4,000,000 shares of preferred stock at $1 par value. Issuance of the new stock would be at the board's discretion. Current shareholders would not be entitled to any preemptive rights. The board would determine the voting rights, if any, of each class of preferred stock issued.

Appellant, contending that the shareholders' agreement was no longer in force, solicited proxies in favor of his and his wife's nominees to the board and in opposition to the new stock authorizations. The inspectors at the annual meeting, appointed by Rockwell, considered the irrevocable proxies binding. As a result, the measures proposed by the Rockwell group were easily passed.

On October 27, 1981, Mr. Schmidt brought the instant action, purportedly pursuant to section 611 of the Business Corporation Law, to annul the tabulation of the votes at the shareholders' meeting insofar as the inspectors were not disinterested, breached their duties, and were negligent and unfair. By order to show cause, dated October 23, 1981, Mr. Schmidt initiated the instant proceeding purportedly pursuant to section 619 of the Business Corporation Law, to set aside the election of the board of directors and to vacate the passage of the amendments to the articles of incorporation authorizing the issuance of the new shares. Schmidt also requested consolidation of those matters pending in the Supreme Court.

Motions were made by Magnetic Head and the other named defendants in the section 611 action to dismiss that action and the proceeding brought pursuant to section 619, for failure to state a cause of action. By order, dated January 29, 1982, Special Term dismissed the action on the ground that "[t]he sole and exclusive remedy * * * to test the procedures, fairness and conduct of such elections is pursuant to Section 619 of the Bus. Corp. Law". Special Term refused to deem the action a proceeding brought under section 619, since such a proceeding was "presently pending before this Court". In a decision, also dated January 29, 1982, followed by a judgment entered March 16, 1982, the same court dismissed the section 619 proceeding. These appeals followed.

■ Special Term properly dismissed the action to annul the tabulation of the vote at the October 6 annual meeting. Section 611 of the Business Corporation Law governs the conduct of inspectors at a corporation election and reads as follows: "The inspectors shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the validity and effect of proxies, and shall receive votes, ballots or consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate all votes, ballots or consents, determine the result, and do such acts as are proper to conduct the election or vote with fairness to all shareholders. On request of the person presiding at the meeting or

any shareholder entitled to vote thereat, the inspectors shall make a report in writing of any challenge, question or matter determined by them and execute a certificate of any fact found by them. Any report or certificate made by them shall be prima facie evidence of the facts stated and of the vote as certified by them." While this section clearly prescribes the duties of an inspector at a shareholders' meeting, it does not, in and of itself, provide the mechanism for challenging the results of such a meeting. Specifically, the exclusive method for testing the validity of an election of an officer or director is either through an action in the nature of quo warranto brought by the Attorney-General, or through a proceeding instituted under section 619 of the Business Corporation Law (see *Christ v Lake Erie Distrs.*, 51 Misc 2d 811, 815-816, mod on other grounds 28 AD2d 817; 3 White, New York Corporations [13th ed], par 619.01).

Section 619, titled "Powers of supreme court respecting elections", reads as follows: "Upon the petition of any shareholder aggrieved by an election, and upon notice to the persons declared elected thereat, the corporation and such other persons as the court may direct, the supreme court at a special term held within the judicial district where the office of the corporation is located shall forthwith hear the proofs and allegations of the parties, and confirm the election, order a new election, or take such other action as justice may require." The nature and extent of an inspector's authority, as set forth in section 611, might well be relevant in a proceeding brought pursuant to section 619 (see *Matter of Gunzburg v Gunzburg,* 74 AD2d 636). However, section 611 does not itself authorize any proceeding or action.

Besides the request for consolidation of all matters then pending in the Supreme Court, the proceeding ostensibly brought under section 619 includes two general components or allegations which can be distinguished as follows: (1) the vote at the annual meeting was invalid in that it was replete with irregularities, particularly in relation to the alleged use of biased inspectors and an improper tabulation; and (2) the Schmidts' irrevocable proxies are invalid because the underlying stockholders' agreement must be

rescinded or reformed, and, therefore, the vote tally in favor of the board of directors proposed by the Schmidts and in opposition to the authorizations of new shares should include the number of votes represented by these proxies.

The first component is sufficiently broad in its reach to cover the matters raised in the action purportedly authorized under section 611. Generally, where an action or proceeding is brought in the wrong form or under an inappropriate statute, the court, in its discretion, may deem it brought in a proper fashion, thus avoiding a dismissal (CPLR 103, subd [c]). However, since Schmidt has brought a proceeding pursuant to section 619, and because the petition in that proceeding includes the allegations contained in the action, Special Term did not abuse its discretion by dismissing the latter.

■ Analyzing the viability of the section 619 proceeding, Special Term held that the results of the annual meeting should not be set aside on the ground of alleged vote irregularities, even if existent, since, absent the alleged irregularities, the same results would have obtained (see *Matter of Goldfield Corp. v General Host Corp.*, 29 NY2d 264, 273). This conclusion appears well founded, provided it is assumed, as held by Special Term, that the irrevocable proxies are valid. After all, considering the large block of votes turning on the validity of these proxies and the fact that members of the Rockwell group own and control a significant number of shares in their own right, any irregularities of inspection and tabulation of the vote would probably not be factors affecting the outcome.

As for the proxies and shareholders' agreement, Special Term concluded that "the irrevocable proxies are valid and binding at this time". As to some future time, the court remarked that the proxies had a term of up to 10 years. The court went on to state: "The other pending action for reformation or rescission of the Stockholders Agreement which seeks a determination that the Schmidts are entitled to nominate and elect one director to fill the vacancy caused by the resignation of James North would not affect the negation of the Schmidts' irrevocable proxies and allow the Schmidts to vote all the shares they own beneficially.

Thus, petitioner has not met the burden of establishing by a preponderance of the evidence that the irrevocable proxies are invalid".

In order to overturn the election of the board of directors, appellant must show by a preponderance of the evidence that the irrevocable proxies are invalid (*Dal-Tran Serv. Co. v Fifth Ave. Coach Lines,* 14 AD2d 349, 354). However, petitioner has not yet had that opportunity. This proceeding is presently before us in the posture of an appeal from a judgment dismissing the petition for failure to state a cause of action, pursuant to CPLR 3211, wherein Special Term applied the preponderance of evidence criterion. This was an inappropriate standard since, at this juncture, every reasonable inference must be drawn from the record in petitioner's favor (*Rovello v Orofino Realty Co.,* 40 NY2d 633, 634; *Friedman v Roseth Corp.,* 271 App Div 870).

Whatever the legal status of an irrevocable general proxy prior to the enactment of the Business Corporation Law (see *Sullivan v Parkes,* 69 App Div 221, 229-230; *Hey v Dolphin,* 92 Hun 230), that act expressly allows for the creation of such within the rubric of a shareholders' agreement and provided certain formal requisites are met (Business Corporation Law, § 609, subd [f], par [5]). By implication, if the shareholders' agreement in this case is itself subject to attack, the proxies will be vulnerable. As made clear in *Schmidt v Magnetic Head Corp. (supra),* a trial is necessary to determine if the shareholders' agreement should be reformed so as to give to the Schmidts the authority to designate North's successor on the board of directors. If reformation is granted, then at the very least, the October 6 election will be affected insofar as it resulted in the board's designee assuming North's position. Moreover, Special Term's decision misinterprets the reach of the other pending matter. As afore-stated, one of the causes of action set forth there is for rescission of the shareholders' agreement. If that cause of action were to be sustained at trial, a possibility which should be assumed in appellant's favor, more than the election of one director to replace North will be called into question. With rescission, the Schmidts would be able to vote their shares. It is possible that their slate of directors would be elected and that there

would be no increase in authorized shares (cf. *Matter of McVann,* 96 Misc 2d 879).

■ Special Term refused to consider any issue pertaining to the validity of the authorization of new shares on the ground that such "is not a proper subject for this BCL 619 summary proceeding". Apparently, and quite correctly, the court was of the view that the only issues to be reviewed in a section 619 proceeding are those pertinent to an election of directors or officers. In fact, there was a time when, under the predecessor to section 619, section 25 of the former General Corporation Law, a court was only empowered to confirm an election or order a new one; it could not, for example, determine other seemingly relevant issues such as stock ownership (*Matter of Faehndrich,* 2 NY2d 468 474-475). This was altered with the passage of section 619, which states that the court may "confirm the election, order a new election, *or take such other action as justice may require*" (emphasis supplied). The latter clause has been interpreted so as to allow the court to inquire about and decide any matters which would necessarily pertain to or affect an election's outcome, such as voting rights and stock ownership (*Matter of Buckley* [*Wild Oaks Park*], 44 NY2d 560, 566; *Matter of Crass v Budd Pubs.,* 28 AD2d 1100; *Matter of Unbekant v Bohl Tours Travel Agency,* 21 AD2d 317; *Matter of Carter v Muscat,* 21 AD2d 543). However, it remains the case that section 619 does not authorize judicial inquiry into actions taken at a shareholders' meeting which are not relevant to an election (*Matter of Goldfield Corp. v General Host Corp.,* 29 NY2d 264, 267, *supra*). It follows that the validity of the amendments to the articles of incorporation, providing for new share authorizations, is beyond the scope of a section 619 proceeding, since the amendments do not in any apparent way impinge on the results of an election (see *Republic Corp. v Carter,* 22 AD2d 29, 33; cf. *Matter of Buckley* [*Wild Oaks Park*], *supra*).

Nonetheless, a dismissal of Mr. Schmidt's claim that the new share authorizations are invalid is not warranted. "If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make

whatever order is required for its proper prosecution" (CPLR 103, subd [c]). Applying this statute, the Court of Appeals has held that where a special proceeding should have been brought as a plenary action, "the courts should regard the problem as one of improper form only", and "the special proceeding should be converted into an action" (*Matter of First Nat. City Bank v City of New York Fin. Admin.*, 36 NY2d 87, 94).

Besides the right to contest an election through a proceeding brought pursuant to section 619, an aggrieved shareholder may, in relation to a shareholders' meeting, bring an action in equity to enjoin persons not entitled to vote from voting; he may seek to enjoin corporate officials from interfering with the right to vote of persons entitled to vote; he may request review of the validity of action taken at the meeting other than an election; and he may attempt to prevent the implementation of nonelection measures voted upon at the meeting (3 White, New York Corporations [13th ed], par 619.05, pp 6-426.1, 6-427). For example, an increase in authorized stock, passed by resolution at a shareholders' meeting, has been held to be subject, in appropriate circumstances, to an action in equity (*Danzig v Lacks*, 235 App Div 189). Further, an action will lie to prevent the voting of certain shares held by a trustee, where that trustee allegedly obtained the shares through a fraudulent agreement (*Butler v Standard Milk Flour Co.*, 146 App Div 735). Similarly, an equitable action will lie to determine who has the right to vote certain shares (*Benkard v Leonard*, 231 App Div 625), or to determine whether certain proxies may or may not be voted (*Prince v Albin*, 23 Misc 2d 194; *Willoughby v Port*, 182 F Supp 496, mod on other grounds 277 F2d 149).

Because the petition alleges that the new share authorizations are infirm insofar as the vote was improperly tabulated and the shareholders' agreement providing for the proxies should be rescinded, and because it is apparent that a proper form of action was available, the proceeding as it pertains to the new share authorizations should be deemed converted into an action to determine the validity of these authorizations and for other appropriate relief. It should be noted in this regard that apparently only

"Charles Rockwell, for himself, and as Chief Executive Officer of Magnetic Head Corporation", was served with the order to show cause and petition in the section 619 proceeding. This is significant here in that a court may only convert a proceeding to a proper form where it has obtained jurisdiction over the parties (CPLR 103, subd [c]; *Matter of New York State Rest. Assn. v Board of Stds. & Appeals,* 19 AD2d 912). At the present time the only party defendants to that part of the proceeding which we are converting into an action are Mr. Rockwell, individually, and Magnetic Head.

Because of the possibility that the shareholders' agreement may be rescinded, rendering invalid the irrevocable proxies, and because both the new share authorizations, as well as the election of the board, are matters properly before the court, it is apparent that a dismissal is inappropriate. It is also apparent that some of the factual and legal issues involved in this proceeding and the action which a portion of the proceeding has been converted into are closely connected with the other pending action for rescission and reformation of the shareholders' agreement. It would, therefore, be advisable for Special Term, on application, to consider a consolidation or joinder of these matters (see *Matter of Elias v Artistic Paper Box Co.,* 29 AD2d 118; *Matter of Crass v Budd Pubs.,* 28 AD2d 1100, *supra*).

As further grounds to challenge the new share authorizations, on appeal Mr. Schmidt argues, for the first time, that the vote of his and his wife's proxies in favor of the authorizations went beyond the authority granted in the shareholders' agreement and/or was in violation of the fiduciary responsibility owed to them, the beneficial owners of some 45% of Magnetic Head's outstanding stock. It is clear from what has already been said that causes of action along these lines must be brought within the context of a plenary action, and not in a section 619 proceeding (see, e.g., *Katzowitz v Sidler,* 24 NY2d 512; *Puro v Purofied Down Prods. Corp.,* 87 AD2d 566; *Danzig v Lacks,* 235 App Div 189, *supra; Tashman v Tashman,* 13 Misc 2d 982). Since these allegations are raised for the first time on appeal, and because the Schmidts may be advised to institute such a plenary action, it is not appropriate for us at

this time to determine whether, in the circumstances, such causes of action could withstand motions to dismiss or for summary judgment.

We do note, however, that several courts in this State have remarked, with little amplification, that a proxy holder does have a fiduciary obligation to the shareholder for whom he or she holds the proxy (see *Dal-Tran Serv. Co. v Fifth Ave. Coach Lines,* 14 AD2d 349, 353, *supra; Matter of Ideal Mut. Ins. Co.,* 18 Misc 2d 127, affd 9 AD2d 60; *Bull & Co. v Morris,* 132 Misc 509, 514, affd 226 App Div 868). Furthermore, it has been held that "[t]he relationship created by a proxy is one of principal and agent and is subject to the duties and liabilities of agency in general", and that "a proxy may not vote in favor of resolutions which benefit himself at the expense of or against the principal's interest" (*Abbey Props. Co. v Presidential Ins. Co.,* 119 So 2d 74, 78 [Fla]; accord *Dolese Bros. Co. v Brown,* 39 Del Ch 1; *State ex rel. Weede v Bechtel,* 239 Iowa 1298; *Lowman v Pierce Co.,* 276 Pa 382; *Mutual Reserve Fund Life Assn. v Taylor,* 99 Va 208; *Blair v Smith Co.,* 18 Del Ch 150; *Rice & Hutchins v Triplex Shoe Co.,* 16 Del Ch 298, affd 17 Del Ch 356). However, we also note that to say that a person is a fiduciary only begins the analysis. Other questions remain, such as whether the irrevocable nature of the proxies in this case affect the range of the proxies' fiduciary obligations, whether the best interests of the corporation are relevant (cf. *Schwartz v Marien,* 37 NY2d 487; *Katzowitz v Sidler,* 24 NY2d 512, *supra*), and what are the consequences of any deviation from duty (see *Securities Comm. v Chenery Corp.,* 318 US 80, 85-86). Resolution of these matters must wait another day.

Accordingly, for the reasons stated, the order of the Supreme Court, dated January 29, 1982, should be affirmed, and the judgment of that court, entered March 16, 1982, should be reversed and so much of the section 619 proceeding as pertains to the new share authorizations should be deemed converted into an action to determine the validity of these authorizations and for other appropriate relief.

MANGANO, J. (concurring in part and dissenting in part). I concur in so much of the majority opinion as (1) affirms

the granting of the motion to dismiss the complaint in the instant action brought pursuant to section 611 of the Business Corporation Law; (2) denies the motion to dismiss the instant proceeding commenced pursuant to section 619 of the Business Corporation Law; and (3) recommends that Special Term, upon application, should consolidate or join the instant proceeding with the pending action commenced by appellant and his wife against Magnetic Head Corporation for rescission and reformation of a shareholders' agreement dated April 30, 1978 (*Schmidt v Magnetic Head Corp.*, 97 AD2d 151).

However, I am compelled to clarify my disagreement with the remainder of the majority's opinion.

As noted by Special Term, the order to show cause in the instant proceeding apparently also sought a determination regarding the validity of the two resolutions which authorized an increase in the number of Magnetic Head Corporation's common shares, and the creation of a new class of preferred shares. Special Term properly held that this issue was not "a proper subject for this BCL 619 summary proceeding". Indeed, such an issue can only be raised in a plenary action (*Matter of Goldfield Corp. v General Host Corp.*, 29 NY2d 264). Although the majority agrees with Special Term on this point, it would not dismiss that part of the petition which alleges that these new share authorizations are invalid. Rather, under the authority of CPLR 103 (subd [c]), it would convert that part of the petition into a plenary action to determine the validity of the new share authorizations.

I do not agree with this approach.

The petition and supporting papers are totally silent as to the exact gravamen of appellant's allegation regarding the proposals authorizing the issuance of the new shares. It is only in the appellant's brief that the precise nature of his attack on these proposals can be discerned, viz., that irrespective of the fact that the holders of the irrevocable proxies were entitled to vote at the corporate election of October 6, 1981, "for whatsoever purposes", they nevertheless breached a fiduciary duty to their shareholders in voting for the resolutions authorizing the issuance of new

shares, since those resolutions had the effect of creating "fundamental or radical changes in basic corporate structure".

Since this particular theory was not raised at all in the petition, I do not agree with the majority's decision to (1) invoke CPLR 103 (subd [c]) and convert a part of this summary proceeding under section 619 of the Business Corporation Law to a plenary action and (2) comment, however so briefly, on the merits, of such a theory.

Accordingly, I concur in part and dissent in part.

LAZER, J. P., and GULOTTA, J., concur with GIBBONS, J.; MANGANO, J., concurs in part and dissents in part, with an opinion.

Order of the Supreme Court, Nassau County, dated January 29, 1982, affirmed, without costs or disbursements.

Judgment of the same court, entered March 16, 1982, reversed, without costs or disbursements, motion to dismiss denied, so much of the proceeding pursuant to section 619 of the Business Corporation Law as pertains to the new share authorizations is deemed converted into an action to determine the validity of these authorizations and for other appropriate relief, and matter remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith.